Dani SIEGEL, Plaintiff,

v.

**TUCKER, ANTHONY & R.L. DAY, INC. and Lee Balter, Defendants.**

**No. 86 Civ. 5008 (SWK).**

United States District Court, S.D. New York.

April 2, 1987.

---

Carro, Spanbock, Fass, Geller, Kaster & Cuiffo, New York City by Kenneth A. Lapatine Vincent Lipari, for plaintiff.

Shanley & Fisher, P.C., New York City by Matthew Farley, Brian McDonough, Robert G. Brehme, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action arises out of a brokerage account plaintiff Dani Siegel ("Siegel")

opened in 1981 with defendant Tucker, Anthony & R.L. Day, Inc. ("Tucker Anthony"), a brokerage firm, and defendant Lee Balter ("Balter"), one of its registered account representatives. This action is brought under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, 17 C.F.R. § 240.-10b–5; Section 15(c)(1) of the Exchange Act, 15 U.S.C. § 78o(c)(1), and Rule 15c1–7(a) thereunder, 17 C.F.R. § 240.15cl–7(a); and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* The Court has jurisdiction under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and Section 1964 of RICO, 18 U.S.C. § 1964.

Plaintiff alleges fraudulent misrepresentations by defendants in inducing plaintiff to give defendants control of his account, churning of plaintiff's account, and a RICO claim. The case is presently before the Court on defendants' motion (1) to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (2) to dismiss all claims alleging fraud for failure to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, and (3) to stay this action and compel arbitration of all claims pursuant to the arbitration provisions of plaintiff's customer agreements. For the reasons outlined below, defendants' motion is granted

*The Fraudulent Misrepresentation Claim*

Plaintiff alleges that on or about August 5, 1981, during a telephone call between Siegel and Balter and, again, during lunch at a midtown restaurant, Siegel advised Balter—and, through him, Tucker Anthony—of his conservative investment goals. Balter then allegedly made fraudulent misrepresentations including that defendants would manage Siegel's account conservatively and would not speculate or take unnecessary risks and that defendants had made significant monies for their clients by allowing them to follow Balter's investment philosophy and would make significant monies for Siegel. Balter allegedly

subsequently represented to Siegel in numerous telephone calls throughout the duration of the relationship that the securities purchased for his account were suitable and that the losses sustained were temporary and would soon be recouped. Such misrepresentations allegedly were made in the context of defendants' efforts to induce plaintiff to give defendants control of plaintiff's account so that they could generate excessive commissions and secret profits through trading made for defendants' and not plaintiff's profit. As a result, plaintiff allegedly was misled, detrimentally relied upon these representations and was induced to give defendants control of his account which defendants then proceeded to churn. Finally, in his memorandum of law but not in his complaint, plaintiff contends that these misrepresentations were made in connection with the purchase of a security because they induced plaintiff to open a discretionary account, which is an investment contract and thus a security, with defendants.

■ Defendants argue that plaintiff's claim fails to plead fraud with the particularity required by Rule 9(b) and that the claim otherwise fails to state a claim because the allegedly fraudulent statements did not induce specific investment decisions.

To state a claim under Section 10(b) or Rule 10b–5, the complaint must allege "(1) that defendants misrepresented or omitted to state material facts in connection with the purchase or sale of a security, (2) that plaintiff[ ] relied to [his] detriment upon defendants' misrepresentations or omissions, and (3) that defendants made their misrepresentations or omissions with 'scienter,' that is, an intent to deceive, manipulate or defraud plaintiff[ ]." *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 639 F.Supp. 1391, 1394 (S.D.N.Y.1986) (citations omitted).

Under Rule 9(b), a plaintiff must set forth "the time, place and content of the alleged misrepresentations." *Gamble v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* [1982–83 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 99,046 (S.D.N.Y. Dec. 30,

1982). Plaintiff clearly has alleged this much, and his motion to dismiss for failure to plead fraud with the required specificity pursuant to Rule 9(b) must be rejected.

Moreover, promises of conservative stewardship in inducing plaintiff to invest monies with defendants, as plaintiff alleges here, are insufficient to state a claim for fraudulent misrepresentation under Section 10(b) or Rule 10b–5; the key factor is whether the allegedly fraudulent statements induced specific investment decisions, and here they did not. *See, e.g., Luce v. Edelstein*, 802 F.2d 49 (2d Cir. 1986); *Bennett v. U.S. Trust Co.*, 770 F.2d 308 (2d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Chemical Bank v. Arthur Anderson & Co.*, 726 F.2d 930 (2d Cir.1984), *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984); *Darrell v. Goodson*, [1979–80 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,349 (S.D.N.Y. Apr. 10, 1980) [Available on WESTLAW, DCT database]. Indeed, such "indefinite promises of conservative management seem to have been made in connection with defendant's efforts to attract plaintiff['s] brokerage business rather than with any subsequent trade in a particular security in plaintiff['s] investment portfolio." *Darrell v. Goodson*, Fed.Sec.L.Rep. ¶ 92,932 at 97,525.

Plaintiff's contention that defendants' misrepresentations were made in connection with the purchase of a security because the opening of a discretionary account, which plaintiff argues is an investment contract and therefore a form of security, is the purchase of a security is without merit as plaintiff can demonstrate neither horizontal nor vertical commonality, one of the requisites of an investment contract. *See, e.g., Kaplan v. Shapiro*, 655 F.Supp. 336, 339–41 (S.D.N.Y.1987); *Leone v. Advest*, 624 F.Supp. 297, 304 (S.D.N.Y.1985); *Silverstein v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 618 F.Supp. 436, 439–40 (S.D.N.Y.1985); *Mechigian v. Art Capital Corp.*, 612 F.Supp. 1421 (S.D.N.Y.1985); *Savino v. E.F. Hutton & Co., Inc.*, 507 F.Supp. 1225, 1237–38 n. 11 (S.D.N.Y.1981).

Accordingly, defendants' motion to dismiss plaintiff's fraudulent misrepresentation claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED.

### The Churning Claim

Plaintiff alleges that he communicated his conservative investment goals to defendants, that defendants' trading in his account was excessive in light of these goals and made simply to generate commissions or profits for defendants, and that defendants exercised exclusive control over his account. Plaintiff attaches to his complaint a schedule of 206 sales and 128 purchases on his accounts—representing all trading activity in the accounts for the relevant period—along with a description of the name and number of shares traded, the date acquired or sold and the time held in the account prior to each sale. Plaintiff also alleges that these transactions generated a turnover rate of 5.93 during the relevant 35 month period from August 1981 through June 1984.

Defendants claim that plaintiff has not specified the transactions which allegedly were churned or the facts necessary to calculate the annual turnover ratio. Defendants also argue that the claim as stated warrants dismissal pursuant to Rule 12(b)(6) in light of the principle that an annual turnover ratio of less than six will not normally be considered excessive.

█ Churning occurs where a securities dealer creates commissions by inducing transactions in a customer's account which are disproportionate to the size and character of that account. *Moran v. Kidder Peabody & Co.*, 609 F.Supp. 661, 666 (S.D.N.Y. 1985), *aff'd mem.*, 788 F.2d 3 (2d Cir.1986). In order to state a churning claim under the antifraud provisions of the federal securities laws, plaintiff must allege (1) that the trading in his account was excessive in light of his investment objectives; (2) that the broker exercised control over the account, and (3) that the broker acted with intent to defraud or with willful or reckless disregard for the interests of his client. *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 639 F.Supp. 1391, 1394 (S.D.N.

Y.1986); *Moran,* 609 F.Supp. at 666. The Court finds that plaintiff's complaint adequately alleges each of these three elements.

■■■ In addition, in order to properly plead the elements of a churning claim with the specificity required by Rule 9(b), the complaint also must set forth (1) the nature, amount and date of the securities in question, *Vetter v. Shearson Hayden Stone, Inc.,* 481 F.Supp. 64, 66 (S.D.N.Y. 1979); *Salwen v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 79 F.R.D. 130, 135 (S.D.N.Y.1978); and (2) facts sufficient to permit the calculation of the turnover rate of the account and/or the percentage of the account value paid in commissions, *Moran,* 609 F.Supp. at 666; *Vetter,* 481 F.Supp. at 66. Such facts are necessary in order to "allow the determination of whether or not trading was excessive." *Moran,* 609 F.Supp. at 666. Although there is no clear demarcation between excessive and non-excessive trading, excessive trading generally is thought to exist by courts and commentators when there is an annual turnover rate in an account in excess of six. *Frota v. Prudential-Bache Securities, Inc.,* 639 F.Supp. 1186, 1191 (S.D.N.Y.1986); *Moran,* 609 F.Supp. at 666; *Rush v. Oppenheimer & Co.,* 592 F.Supp. 1108, 1112 (S.D.N.Y. 1984).

■■■ Defendants' first contention is without merit. It is not necessary for a plaintiff who alleges a churning claim to set out each and every transaction he contends was excessive. *Frota,* 639 F.Supp. at 1191. Whether defendants churned plaintiff's account is determined by examining the account activity for the relevant time period as a whole. *Id.* It is clear from plaintiff's complaint that he alleges that defendants churned his account during the entire life of the account from August 1981 through June 1984. In addition, plaintiff appends to his complaint the list of transactions during this period and provides a turnover rate of 5.93 for the 35

month period. Thus, plaintiff alleges that his portfolio was turned over 5.93 times in 35 months. Annualization of this rate is simply a matter of computation which yields an annual turnover rate of approximately 2.00. Accordingly, plaintiff actually alleges that his portfolio was turned over by defendants twice a year during the relevant period.[1] In light of these allegations, the Court concludes that plaintiff has alleged sufficient facts to meet the specificity pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

Nonetheless, plaintiff's annual turnover rate of approximately 2.00 is significantly below the turnover rate generally thought to be excessive—and to be indicative of churning—by the courts in this District. Absent other allegations of special circumstances, not present here, an annual turnover rate of 2.00 is simply too low to justify a claim for churning in this District. *See Frota,* 639 F.Supp. at 1191; *Moran,* 609 F.Supp. at 666; *Rush,* 592 F.Supp. at 1112. Accordingly, defendants' motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED.

*The RICO Claim*

Plaintiff alleges that defendant Balter engaged in a scheme designed to defraud plaintiff by making misrepresentations to induce plaintiff to give Balter discretionary control of the account and then by churning it. In this regard, plaintiff alleges that Balter placed interstate telephone calls and caused confirmation slips, monthly statements and letters to be delivered through the United States mail for the purpose of executing the scheme to defraud.

■■■ Defendant, on the other hand, contends that plaintiff has failed to allege multiple predicate racketeering acts. The Court agrees. This is a broker-customer dispute involving one customer. Under the

---

**1.** Furthermore, where, as here, the defendants initiated all trades during the relevant period and prepared confirmations of each transaction as well as monthly statements, they are clearly in a position to compute any statistic they wish to in order to rebut plaintiff's stated rate. Although defendants argue that plaintiff's stated rate is inaccurate, they have failed to compute an accurate rate from the information available to them. *See Frota,* 639 F.Supp. at 1191.

developing law of this District, RICO predicate acts must each be independently motivated criminal episodes, not merely ministerial acts performed in furtherance of a single fraudulent scheme. *See, e.g., Crummere v. Brown,* RICO Bus. Disputes Guide (CCH) ¶ 6241 (S.D.N.Y. Apr. 3, 1986) [Available on WESTLAW, DCT database] ("A review of the predicate acts alleged demonstrates that Crummere was the victim of a single fraudulent scheme to obtain her savings. While she carefully alleges multiple predicate acts—wire transfers to and from Seattle, Washington, conspiracy to transfer these funds, failure to invest these funds—each is but a single stop along the circuitous cross country route allegedly devised by Brown and/or Johnson to divert Crummere's money. The mere fact that Brown's alleged fraudulent obtaining of the funds occurred in steps rather than in the securing of a single check comprising the entire amount cannot convert this lone fraudulent episode into different criminal episodes."); *Anisfeld v. Cantor Fitzgerald & Co.,* 631 F.Supp. 1461, 1467 (S.D.N.Y. 1986) ("The complaint in this case arises out of a single transaction. The fact that there may have been numerous misrepresentations in connection with this single transaction would not create a pattern under the interpretation of the RICO statute. A single fraudulent transaction does not constitute a pattern; there must be multiple events in order to satisfy the continuity inherent in the term 'pattern.'" (citations omitted)); *Soper v. Simmons International, Ltd.,* 632 F.Supp. 244, 254–55 (S.D.N.Y. 1986) ("The acts alleged by plaintiff as predicate acts do not meet these requirements of a 'pattern'—as in *Inryco,* [*Northern Trust Bank/O'Hare, N.A. v. Inryco Co., Inc.,* 615 F.Supp. 828 (N.D.Ill.1985) ], they are merely 'ministerial acts performed in the execution of a single [allegedly] fraudulent scheme' to deprive plaintiffs of their promised commission. As such, plaintiffs have failed to establish 'some sort of continuity between the acts or a threat of continuing criminal activity,' and their amended complaint must be dismissed." (footnote and citations omitted)).

Accordingly, defendants' motion to dismiss plaintiff's RICO claim for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED.

### CONCLUSIONS

For the reasons set forth above, plaintiff's amended complaint is dismissed. Plaintiff already has had the opportunity to amend his complaint in response to defendants' first motion to dismiss. It would be unfair to defendants for the Court to continue to allow plaintiff the opportunity to continue to amend his complaint in a further attempt to plead successfully. Accordingly, plaintiff's complaint is dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

SO ORDERED.