Nathan LOWENBRAUN and Carol Lowenbraun, Plaintiffs,

v.

L.F. ROTHSCHILD, Unterberg, Towbin, Arthur Levine and Steven Stark, Defendants.

No. 86 CIV. 2778 (SWK).

United States District Court, S.D. New York.

Feb. 25, 1988.

**338**

Richard Realmuto, New York City, for plaintiffs.

Hertzog, Calamari & Gleason, New York City (Loretta A. Preska, Anthony L. Paccione, of counsel), for defendants.

KRAM, District Judge.

Plaintiffs sue to recover monies invested in various accounts pursuant to the federal securities laws, 15 U.S.C. § 78j(b) ("section 10(b)" of the Securities Exchange Act of 1934), 17 C.F.R. § 240.10b–5 ("Rule 10b–5"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and common law fraud. Plaintiffs filed an amended complaint in accordance with this Court's decision, *Lowenbraun v. L.F. Rothschild,* No. 86 Civ. 2778 (SWK), slip op. (S.D.N.Y. January 15, 1987) (available on WESTLAW, 1987 WL 5806), which dismissed the RICO claim, one of the Rule 10b–5 claims, the common law fraud claims, and certain other securities law violations which plaintiffs have not replead.

The complaint now sets forth four claims: (1) churning, (2) RICO, (3) fraudulent inducement based on material misrepresentations, and (4) common law fraud.[1] Defendants have again moved to dismiss the complaint as to counts two through four pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, defendants' motions to dismiss the RICO claim and to dismiss the federal fraud claim are granted and their motion to dismiss the common law fraud claim is granted in part and denied in part.

## DISCUSSION

### The RICO Claim

Defendants argue that the RICO claim should be dismissed for failure to allege a "pattern" of racketeering activity, for failure to allege a mailing in furtherance of the fraudulent scheme and for failure to allege the predicate acts with the particularity required of Rule 9(b). Defendants' Memorandum of Law at pp. 4–5. Defendants' discussion of the pattern requirement in reality argues that plaintiffs have not alleged a RICO "enterprise". This Court dismisses the RICO claim for failure to allege a RICO enterprise, and does not reach the other issues.

 In this Circuit, the requirement of pleading a pattern of racketeering activity

---

1. Plaintiffs' amended complaint, which only contains four causes of action, uses the same numbering as the original complaint, which had five causes of action. Consequently, plaintiffs have labelled the fraudulent misrepresentation claim as the fourth claim and the common law claim as the fifth.

and pleading an enterprise are closely interrelated. In *Sedima, S.P.R.L. v. Imrex, Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285, n. 14, 87 L.Ed.2d 346 (1985), the Supreme Court noted that Congress did not intend the RICO sanctions to reach "sporadic activity" and decided that two unrelated predicate acts did not constitute a pattern. Instead, there must be "more than one 'racketeering activity' and a threat of continuing activity ..." *Id.* Viewing this now-famous footnote as dictum, the Second Circuit decided that the "continuity plus relationship" factor required by *Sedima* could best be determined by examining the enterprise element. *United States v. Ianniello,* 808 F.2d 184, 190 (2d Cir.1986), *cert. denied sub nom. Cohen v. U.S.,* — U.S. —, 107 S.Ct. 3229, 97 L.Ed.2d 736 and *cert. denied,* — U.S. —, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987). While "two related predicate acts are sufficient to constitute a RICO 'pattern' ", *Creative Bath Products, Inc. et al. v. Connecticut Gen. Life Ins. Co.,* 837 F.2d 561, 564 (2d Cir.1988), this pattern of racketeering must be related to the common purpose of a continuing enterprise, *Albany Ins. Co. v. Esses,* 831 F.2d 41, 44 (2d Cir. 1987). The plaintiff must "establish the existence of an enterprise whose illicit activities or unlawful goals are continuing ones." *Creative Bath Products, supra,* at 564.

In this Court, therefore, fraudulent or otherwise unlawful schemes which are discrete in time or purpose have been held not to establish a RICO enterprise, even though a number of predicate acts were involved over a period of time. *See, e.g., Albany Insurance, supra,* 831 F.2d at 44 (inducement of insurer to pay false claims not continuing); *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 51 (2d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) (scheme to sell U.S. collateral at reduced price found to be "straightforward, short-lived goal"). In contrast, schemes which have "no obvious terminating goal or date" satisfy the continuity requirement. *Ianniello,* 808 F.2d at 192 (skimming profits). While plaintiff need not allege more than one RICO "episode" to establish that a pattern exists, *Beck, supra,* 820 F.2d at 51, a series of predicate acts, even in furtherance of a common unlawful scheme, does not necessarily state a RICO cause of action if the scheme is not a continuing one or does not threaten to continue into the future. *See Albany Insurance, supra,* 831 F.2d at 44 ("nothing in Albany's amended complaint ... indicates a threat of continuing criminal activity beyond [the] terminating goal.").

Finally, one court recently reasoned that a "confluence of factors considered on a case by case basis" should inform a court's decision whether a given alleged enterprise possesses the necessary continuity to survive dismissal. *Nassau–Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.,* 662 F.Supp. 1499, 1505 (S.D.N.Y.1987). These factors include the "number and variety of predicate acts, the length of time over which they were alleged to be committed, the number of victims, whether multiple schemes are alleged, and the nature and the diversity of the injuries alleged." *Id.*

In the present case, plaintiffs allege that defendant Levine induced plaintiff Nathan Lowenbraun, by making certain misrepresentations over the telephone on two occasions, to establish an investment account with defendant R.L. Rothschild, a brokerage house, and to purchase certain securities in order to churn his account.[2] Plaintiffs have alleged that defendants churned their account in the course of 119 transactions over the course of a sixteen-month period, and argue that this series of transactions, in combination with monthly statements mailed to plaintiffs and the fraudulent misrepresentations made to induce plaintiffs to open the account, satisfy the continuity requirement.

*Siegal v. Tucker, Anthony and R.L. Day, Inc.,* 658 F.Supp. 550, 553 (S.D.N.Y.1987) (citations omitted).

---

**2.** "Churning occurs where a securities dealer creates commissions by inducing transactions in a customer's account which are disproportionate to the size and character of that account."

This Court disagrees. Plaintiffs have at best alleged a short-lived churning scheme which had the discrete goal of generating excessive commissions. Defendants' churning scheme ended in March, 1984, and plaintiffs have not alleged that this or any related scheme has continued or threatens to continue. Although the "enterprise", here defendant Rothschild, continues to exist as a legitimate business, the unlawful acts upon which suit is brought are not continuing. An Eastern District judge recently concluded that "an entity which functions legitimately upon the termination of its single [alleged] criminal episode [cannot be regarded] as an enterprise the conduct of which violates RICO." *Khaimi v. Schonberger*, 664 F.Supp. 54, 57 (S.D.N.Y. 1987) (nursing home was enterprise that continued to exist after achieving unlawful goal of evicting plaintiff from the residence), *aff'd*, 838 F.2d 1203 (2d Cir.1987).

If this Court were to accept plaintiffs contention that these allegations, without more, established a RICO claim, every churning claim would also become a RICO claim, and RICO would wrongly be applied to "sporadic activity". This and other courts have recognized that allegations of churning schemes such as the one in this case do not present the necessary element of continuity. *See Newman v. L.F. Rothschild*, 677 F.Supp. 146, 147 (S.D.N.Y.1987) (24–month churning scheme not "continuing" under *Beck* analysis); *Siegal v. Tucker, Anthony and R.L. Day, Inc.*, 658 F.Supp. 550, 554–555 (S.D.N.Y.1987) (churning scheme with one customer not "continuing");[3] *Winer v. Patterson*, 663 F.Supp. 723, 726 (D.N.H.1987) (plaintiff's allegation of five-year churning scheme, with over 200 transactions, did not allege the continuing activity required by *Sedima*); *but see Levine v. Merrill, Lynch,* 639 F.Supp. 1391, 1396 (S.D.N.Y.1986) (churning allegation satisfied *Sedima's* continuity factor); *Rush v. Oppenheimer*, 628 F.Supp. 1188, 1200 (S.D.N.Y.1985) (allegations of churning, misrepresentations as to the riskiness, the profitability and the type of activity being conducted in the account, and deceptions as to defendant's skills satisfied RICO pattern requirement). Churning has been viewed as a "unified offense", *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 530 (9th Cir.1986), suggesting that an allegation of a churning scheme aimed at a very limited number of persons and which has ended should not be viewed as an ongoing criminal enterprise threatening further criminal activity. *See Winer, supra,* 663 F.Supp. at 726. In *Newman, supra,* at 147, a case against the same defendants as in this case and with nearly identical allegations, Judge Sweet decided that the purported fraud of churning was "no more than the 'straightforward and short-lived' scheme alleged in *Beck*." As in the case before this Court, the alleged scheme ended in March, 1984 and plaintiffs have not alleged any subsequent or prior frauds.[4] Accordingly, plaintiffs have not alleged a RICO enterprise and their RICO claim is dismissed. Leave to replead is denied since plaintiff's have failed to state a claim in a way that repleading could cure. *Albany Insurance, supra,* 831 F.2d at 45.

The Rule 10b–5 Misrepresentation Claim

Plaintiffs allege that defendants violated Rule 10b–5 by making two misrepresentations in relation "to the recommendation and acceptance of transactions in 'new issues'" that induced plaintiffs to invest in the account which defendants allegedly intended to churn. Complaint at ¶ 34. First, defendant Levine allegedly misrepresented to plaintiff Lowenbraun on or about November 10, 1982 that plaintiffs could expect

---

**3.** Although *Siegal* was decided before *Beck,* and relies on the absence of more than one criminal *episode* as a basis for decision, the Court in effect decided that "a scheme designed to defraud plaintiff by making misrepresentations to induce plaintiff to give [defendant] discretionary control of the account and then by churning it" did not sufficiently satisfy the continuity factor required by *Sedima. Siegal, supra,* 658 F.Supp. at 555.

**4.** The existence of a similar churning action brought against the same defendants suggests the possibility that defendants alleged fraud involved more than the limited number of injured parties involved in this action. Plaintiffs have not made such allegations and, as such, that factual possibility is not before this Court.

to earn in excess of 10% on their investment without risk to their principal "in order to induce plaintiff to place his investment portfolio with defendant" for the purpose of churning the account. *Id.* at ¶ 34(a). Defendants argue that this allegation should be dismissed since it does not allege a misrepresentation in connection with the purchase or sale of a security. This Court agrees.[5]

■ Amongst other requirements, plaintiffs asserting a securities fraud claim pursuant to section 10(b) must allege that the alleged misrepresentations were made in connection with the purchase or sale of a security. *Bosio v. Norbay Securities, Inc.*, 599 F.Supp. 1563, 1565 (S.D.N.Y.1985). Investment accounts are not securities unless plaintiff can establish that they are investment contracts by showing that the plaintiff invested money in a "common enterprise" expecting to profit solely from the efforts of a promoter or a third party. *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946). A common enterprise is present if there is "vertical commonality" between broker and client. *Leone v. Advest, Inc.*, 624 F.Supp. 297, 304 (S.D.N.Y.1985); *see generally Kaplan v. Shapiro*, 655 F.Supp. 336, 339–341 (S.D.N.Y.1987). Vertical commonality is present when there is interdependence between broker and client for both profits and losses of the investment. *Kaplan,* 655 F.Supp. at 341. In the Lowenbraun's case, profits and losses were not interdependent since the broker allegedly profited from the commissions while plaintiffs suffered losses. *See id.* (noting that

there is no commonality in this typical broker-client situation); *see also Darrell v. Goodson,* [1979–80 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 97,349 at 97,325 (S.D.N.Y. April 10, 1980) ("a discretionary brokerage account owned by a single customer possesses none of the characteristics of a 'common enterprise' required for the existence of an investment contract."). The "investment portfolio" in which defendants induced plaintiffs to invest was thus not a security and the claim of fraudulent misrepresentation is dismissed.

■ Defendants also seek to dismiss paragraph 35 of the complaint for failure to plead fraud with the requisite particularity required by Rule 9(b).[6] Rule 9(b) requires that

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The particularity requirement exists primarily to protect defendants from frivolous suits. Specifically, Rule 9(b) exists to give the defendant in a fraud action "fair notice of what the plaintiffs' claim is and the grounds upon which it rests." *Ross v. A.H. Robbins,* 607 F.2d 545, 557 (2d Cir. 1979), *cert. denied* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980) (citations omitted). Allegations in a fraud complaint must specify the time, place, speaker, and the content of the alleged misrepresentations. *DiVittario v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). Conclusory allegations of fraud

---

**5.** The complaint does not explicitly describe the nature of the relationship between plaintiffs and defendants. For example, the complaint does not state whether the parties entered into a written contract or who had what responsibilities for the account. Reading the complaint as a whole, it appears that plaintiffs opened a discretionary investment account with defendants. Since plaintiffs allege that they were inexperienced in the market and further allege that they received monthly mailings describing the activity in their account, the Court assumes that plaintiffs gave defendants discretionary control over the account.

**6.** Paragraph 35 reads:

During the 16 month period commencing on November 10, 1982 and terminating on or about March 30, 1984, defendant LEVINE, during the time of his employment at L.F. ROTHSCHILD, and defendant L.F. ROTHSCHILD jointly and in concert, contrary to (sic) best interests of plaintiffs and for their own gain, intentionally and willfully induced "new issue" transactions through the use of untrue statements of material fact in order to make the statements made, in light of the circumstances under which they were made, not misleading; all in violation of Exchange Act Section 10(b), 15 U.S.C. Section 78j(b) and Rule 10b–5(2), 17 C.F.R. Section 240.10b–5(2).

or securities law violations are plainly insufficient. *Ross, supra,* 607 F.2d at 557.

■ Plaintiffs allege that defendants Levine and L.F. Rothschild jointly and severally induced "new issues" transactions by making untrue statements of material facts. Plaintiffs do not allege which new issue transactions to which they refer, nor do they identify the misrepresentations, who said them or when they were said. To the extent the misrepresentations to which plaintiffs refer are the two misrepresentations alleged in paragraph 34, the only two misrepresentations alleged in the complaint, this paragraph is redundant. To the extent this paragraph attempts to allege additional misrepresentations, it has failed entirely to plead fraud with the requisite particularity. Accordingly, paragraph 35 of the amended complaint is dismissed without leave to replead.[7]

■ Finally, defendants seek to dismiss the section 10(b) claim on the basis that plaintiffs have not alleged reliance, a necessary element of a securities fraud claim. While plaintiffs do not state explicitly that they relied on the alleged misrepresentations, they do state that the misrepresentations "induced" their investment decision. Reliance in affirmative misrepresentation cases involves two questions: whether plaintiff believed what the defendant said and whether that belief caused the plaintiff's action. *Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88, 92 n. 6 (2d Cir.1981) (citations omitted). Paragraph 34(b) alleges that defendant Levine induced plaintiffs to purchase securities issued by Bradford National Corp. by falsely representing possession of inside information. Although plaintiffs have alleged a misrepresentation made with scienter, plaintiffs do not describe how they relied on this information. While the allegation states that the information relayed to plaintiffs in April, 1983, induced plaintiffs to purchase Bradford stock, such stock had previously been purchased for plaintiffs account on January 4, 1983. Thus the allegation does not make it clear that the misrepresentation caused the plaintiffs' actions or injuries. In addition, the complaint nowhere states that plaintiffs had any say in what stocks were bought or sold, nor does it indicate that Bradford stock would not have been purchased if Levine had not made the allegedly false statements. In addition, plaintiffs have not alleged what injury resulted from their purchasing these particular stocks [8] and this claim is accordingly dismissed.

### Common Law Claims

Defendant also moves to dismiss plaintiffs' claim for common law fraud pursuant to both Rules 9(b) and 12(b)(6). For the most part, this last count restates the churning claims brought pursuant to federal law. Although only labelled as common law fraud, plaintiffs also appear to seek recovery for breaches of fiduciary duties owed by defendants to plaintiffs. The Court will review plaintiffs' allegations under both theories.

To state a cause of action in New York for common law fraud, the plaintiff must allege a (1) material misrepresentation of a material fact, (2) knowledge of falsity and intent to deceive, (3) justifiable reliance, and (4) injury. *Lowenbraun v. L.F. Rothschild, supra,* slip op. at 7; *Jaksich v. Thomson–McKinnon Securities, Inc.,* 582 F.Supp. 485, 502 (S.D.N.Y.1984). In paragraph 38, plaintiffs allege that

> During the 16 month period commencing on November 10, 1982, and terminating on or about March 30, 1984, defendants LEVINE & STARK, during the time of their employment at L.F. ROTHSCHILD,

---

7. Leave to replead is denied since plaintiffs failed to oppose defendants' assertions that paragraph 35 was not properly plead, in effect conceding the point. Additionally, plaintiffs have already once had the opportunity to replead this claim, dismissed by this Court for failure to plead reliance. *Lowenbraun, supra,* slip op. at 6–7. The original complaint listed a number of allegedly misleading statements made by defendants which the plaintiffs have chosen not to include in the amended complaint.

8. Plaintiffs allege that defendants induced them to buy Bradford stock in order to churn it, but that injury would not distinguish this stock from any of the other allegedly churned stock.

and defendant L.F. ROTHSCHILD jointly and in concert, contrary to the best interests of plaintiffs and for their own gain, intentionally and willfully (sic) made misrepresentations and induced purchases and sales of securities in plaintiffs' account which were excessive in size and frequency and therefore unsuitable in light of the character of such account. These activities constituted and were induced with the deliberate intent to deceive plaintiffs and to perpetrate the common law fraudulent practice of "churning".

Plaintiffs do not identify the misrepresentations, nor do they specify when these statements were made, by whom and to what effect. This allegation also fails to identify which defendants made what statements.

It is possible that the misrepresentations refer to the two listed in paragraph 34. Since the Court has already dismissed paragraph 34(b) for not alleging fraud properly, the Court will only examine paragraph 34(a)'s allegation at this point. Paragraph thirty-eight is dismissed pursuant to Rule 9(b) to the extent it refers to other misrepresentations made by any of the defendants since plaintiffs have failed to plead fraud with particularity by identifying the content, speaker, time and place of the misrepresentations.[9]

■ Paragraph 34(a) alleges that Levine represented that plaintiffs could receive a ten percent return on their investment and thereby induced plaintiffs to open an account with defendants. The elements of a claim for fraudulent inducement are (1) a false representation of a material fact, and (2) detrimental reliance by plaintiff. *Robbins v. Ogden Corp.*, 490 F.Supp. 801, 809 (S.D.N.Y.1980). Scienter must also be alleged since this is a claim for intentional fraud. Plaintiffs have met these requirements. This subparagraph states the fraud with adequate particularity and is not in the nature of puffery since Levine allegedly represented that a specific return

could be achieved for plaintiffs' investment. *Newman v. Rothschild*, 662 F.Supp. 957, 959 (S.D.N.Y.1987). In contrast to the allegation in paragraph 34(b), it is easy to infer from the language of paragraph 34(a) the nature of plaintiffs' reliance; plaintiffs relied on the alleged promise of a specific return in making their decision to open the account with defendants, and reliance is thus adequately plead.

Paragraphs thirty-nine, forty, forty-two and forty-three appear to allege a breach of fiduciary duty on the part of Stark and L.F. Rothschild for failure to supervise plaintiffs' accounts and to prevent the alleged churning. The other paragraphs could be read also to indicate an allegation that Levine breached his fiduciary duties to plaintiffs.[10] A broker who has discretionary powers over an account owes his client fiduciary duties, and shares a principal-agent relationship with the client. *Rolf v. Blyth Eastman Dillon & Co.*, 570 F.2d 38, 45 (2d Cir.1978), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *Jaksich, supra*, 582 F.Supp. at 502; *Bosio, supra*, 599 F.Supp. at 1570. Churning a client's account—which involves abusing the position as broker-agent to gain profits at the client's expense—would certainly involve a breach of the fiduciary duties owed. *See Van Alen v. Dominick & Dominick, Inc.*, 441 F.Supp. 389, 402 (S.D.N.Y.1976), *aff'd*, 560 F.2d 547 (2d Cir.1977). Consequently, these allegations will not be dismissed and defendants' motion is denied to that extent.

## CONCLUSION

Defendants' motion to dismiss plaintiffs' amended complaint is granted in part and denied in part consistent with the above discussion. The RICO claim is dismissed in its entirety without leave to replead. The Section 10(b) misrepresentation claim is dismissed as to paragraphs 34(a) and 35, again without leave to replead. The common law claims are not dismissed, though the fraud-

---

**9.** Leave to replead is denied for the reasons stated in note 6, *supra*.

**10.** Claims for breaches of fiduciary duty need not be alleged with the particularity required of fraud claims. *Bosio.*

ulent misrepresentation allegation will be limited to the two misrepresentations alleged in paragraphs 34(a) and 34(b).

SO ORDERED.