Donald **FRANKS**, Plaintiff,

v.

Thomas **CAVANAUGH**, Philips Appel & Walden, Inc., and F.N. Wolf & Co., Inc., Defendants.

No. **88 CIV. 2121 (SWK)**.

United States District Court, S.D. New York.

April 24, 1989.

Golenbock, Eiseman, Assor, Bell & Perlmutter, New York City by Jeffrey T. Golenbock, for Donald Franks.

Berlack, Israels & Liberman, New York City by Martin S. Siegal, for Thomas Cavanaugh.

J. Jerome Olitt, New York City, for Philips Appel & Walden, Inc.

Bachner, Tally, Polevoy, Misher & Brinberg, New York City by H. Richard Penn, for F.N. Wolf & Co., Inc.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action arises out of section 10(b) of the Securities and Exchange Act of 1934 (the "1934 Act"), as amended 15 U.S.C. § 78j(b), sections 12 and 5 of the Securities Act of 1933 (the "1933 Act"), as amended, 15 U.S.C. § 77*l* and § 77e, and common law principles of fraud, breach of fiduciary duty and negligence. Plaintiff Donald Franks ("Franks") claims generally that Thomas Cavanaugh ("Cavanaugh"), his broker, engaged in unsuitable trading, churned his accounts and sold unregistered stock. Plaintiff seeks punitive damages for Cavanaugh's alleged misconduct. Plaintiff also seeks recovery from the brokerage houses, Philips Appel & Walden, Inc. ("Philips") and F.N. Wolf ("Wolf"), as controlling persons.

Presently before the Court is defendant Wolf's motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Defendants Cavanaugh and Philips have also made a motion to stay the action pending arbitration and to compel arbitration pursuant to 9 U.S.C. § 1 *et seq.* They join in the motion to dismiss by reference in their motion to compel arbitration.

## BACKGROUND

In 1981, plaintiff sought professional advice from defendant Cavanaugh, then a broker's representative at S.D. Cohn & Co., as he was nearing retirement age and was interested in income safety.[1] A conservative investment portfolio, existing solely of tax-free municipal bonds, was developed for plaintiff's account by Cavanaugh. Complaint ¶¶ 8, 9. Franks remained Cavanaugh's client when he moved to Philips and then again when he moved to Wolf in or about November 1986. Complaint ¶ 12.

In late 1984, Cavanaugh informed Franks that he wanted to invest in stocks and assured plaintiff that the investments he would make would be conservative. Complaint ¶ 10. Cavanaugh told plaintiff that he would make at least $100,000 annually and that plaintiff would have to use some of his bonds as collateral for these investments. *Id.* Relying on Cavanaugh's representations, plaintiff authorized such conservative equity investments and provided Cavanaugh with $700,000 worth of bonds for collateral. Complaint ¶ 11.

Cavanaugh allegedly never explained to plaintiff that "he would be borrowing against the bonds to make stock purchases, or that he would be charged interest on a margin account." Complaint ¶ 10. Plaintiff maintains that neither Cavanaugh nor his employer, then Cohn, ever provided plaintiff with information about margins or with a margin agreement. *Id.* Plaintiff also contends that neither Cohn, Philips nor Wolf ever "provided plaintiff with a written agreement of any kind, nor asked plaintiff to provide it with any information of any sort." Complaint ¶ 12.

Plaintiff maintains that Cavanaugh's investments on his behalf were not suitable and that commencing in or about July 1985, and continuing through November 1987, Cavanaugh invested in highly speculative stocks without consulting plaintiff. Complaint ¶ 13. One such investment was a purchase of unregistered stock in Ashley Books in December 1986. Complaint ¶ 18. Plaintiff received this stock from Cavanaugh in the mail in April 1987 without a written prospectus or any other written materials concerning the company. Complaint ¶ 19.

---

**1.** The factual background is culled from the complaint and plaintiff's allegations are accepted as true.

Plaintiff also alleges that the volume of trading in his accounts was grossly excessive. Complaint ¶ 15. Plaintiff contends that "[d]uring the period [from] July 1985 through October 1986, the volume of stock sales in plaintiff's account at Cohn, and then at Philips, was approximately $3 million and involved nearly one hundred transactions, although less than twenty stocks."[2] Complaint ¶ 17. While Cavanaugh was employed at Wolf, "during the period November 1986 through October 1987, the volume of stock trading in plaintiff's account ... exceeded $1.16 million although the average value of all stocks held in the account over the period was approximately $187,000 ... [and] the account was turned over more than six times during that single year." Complaint ¶ 15.

Plaintiff asserts that beginning in December 1986 he told Cavanaugh that he wanted to close his account at Wolf and demanded that he sell the Ashley Books stock, but Cavanaugh failed to do so. Complaint ¶¶ 21, 22. Finally, in November 1987, plaintiff's account was closed, and plaintiff received $400,500 in checks and $100,000 worth of bonds as the total amount remaining in his account. Complaint ¶ 23.

Plaintiff contends that he knew nothing about the stock market and did not recognize any of the companies Cavanaugh was investing in. Complaint ¶¶ 10, 13. He asserts that he repeatedly questioned Cavanaugh about these investments, and Cavanaugh assured him repeatedly that they were entirely safe and suitable for him. Complaint ¶ 13. Further, plaintiff asserts that Cavanaugh's conduct was willful and reckless, and that he intended to defraud plaintiff for his benefit and for the benefit of his employers. Complaint ¶¶ 27, 28, 36, 47, 48.

## DISCUSSION

### The Federal Securities Law Claims

■ Defendant Wolf argues that plaintiff has failed to plead his unsuitability and churning claims with the particularity required by Federal Rule of Civil Procedure 9(b). Rule 9(b) exists to give the defendant "fair notice of what the plaintiffs claim." *Ross v. A.H. Robins*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). "The key to any Rule 9(b) motion is whether the complaint can appraise the defendant of the alleged conduct with enough detail to enable the defendant to prepare a defense." *Wolf Office Equipment v. Wang Laboratories*, No. 87 Civ. 1498 (SWK), slip. op. at 4 (S.D.N.Y. November 18, 1987) (available on WESTLAW, Allfeds, 1987 WL 26844). As a general rule, allegations in a fraud complaint must specify time, place, speaker, and sometimes even the content of the alleged misrepresentation. *Di Vittorio v. Equidyne*, 822 F.2d 1242, 1247 (2d Cir. 1987).

■ Plaintiff alleges that Philips and Wolf are liable for Cavanaugh's conduct, in engaging in unsuitable trades and churning his accounts, as controlling persons pursuant to section 20 of the 1934 Act, as amended 15 U.S.C. § 78t. Complaint ¶¶ 31, 38. In a case with multiple defendants, Rule 9(b) requires that each defendant receive particularized notice of his alleged participation in the asserted fraud. *Di Vittorio, supra*, 822 F.2d at 1247; *The Limited, Inc. v. McCrory Corp.*, 645 F.Supp. 1038, 1043 (S.D.N.Y.1986).

### The Unsuitability Claim

Plaintiff alleges that from July 1985, through November 1987, defendant Cavanaugh invested in highly speculative stocks of unestablished and "start-up" companies, without consulting with the plaintiff. Complaint ¶ 13. Plaintiff asserts that this conduct constituted investments in unsuitable securities in violation of section 10(b) of the 1934 Act and Rule 10b–5. Complaint ¶¶ 24–32. These "start-up" companies allegedly had no history of earnings or divi-

---

**2.** Plaintiff never identifies in the complaint the date Cavanaugh ended his employment at Cohn and moved to Philips.

dends and clearly were not the high grade "blue chip" stocks, the purchase of which the plaintiff allegedly had authorized and believed he was receiving. Complaint ¶¶ 13, 14. Plaintiff further alleges that defendant Cavanaugh misrepresented to him that Cavanaugh's stock investments were conservative and suitable for him. Complaint ¶¶ 18, 26, 41. Plaintiff also asserts that Cavanaugh specifically misrepresented that Ashley Books, an unregistered stock purchased by Cavanaugh in December 1986, was a suitable investment. Complaint ¶¶ 18, 26, 41. Defendant argues for dismissal of the unsuitability claim because plaintiff's allegations are generally and conclusorily stated without the specificity required by Rule 9(b). Def. Wolf Mem. of Law at 3.

■ In order to support a cause of action for unsuitability, the plaintiff must identify the transactions in question and the securities involved, and at least give some indication why he considers such securities to have been unsuitable. *Kempner v. Oppenheimer*, 662 F.Supp. 1271, 1282 (S.D.N.Y. 1987); *Levin v. Shearson Lehman/American Express, Inc.*, 1984–85 Fed.Sec.L.Rep. (CCH) ¶ 92,080 at 91,407 (S.D.N.Y.1987) (available on WESTLAW, Allfeds, 1985 WL 1683); *Vetter v. Shearson Hayden Stone, Inc.*, 481 F.Supp. 64, 66 (S.D.N.Y.1979).

■ With the exception of the Ashley Books stock, plaintiff has failed to identify a single unsuitable security purchased by Cavanaugh over the two-year period of trading in question. Plaintiff merely alleges that the stocks were "highly speculative," and constituted investments in "unestablished and start-up companies." Complaint ¶ 14. Moreover, Cavanaugh is charged with unsuitable trading while he was employed at two different defendant companies over the course of two distinct time periods. Plaintiff's allegations, however, are not specific enough to provide each defendant with sufficient notice to defend against the serious fraud with which they are charged. Consequently, plaintiff has not met the specificity pleading requirements of Rule 9(b). The unsuitability claim, count one, is therefore dismissed without prejudice with leave to replead in conformity with the particularity requirements of Rule 9(b) within thirty days of this opinion.

## The Churning Claim

Plaintiff alleges that Cavanaugh engaged in a grossly excessive and unnecessary volume of trading in his account at Cohn and at Philips, from July 1985 through October 1986, and then again at Wolf, from November 1986 through November 1987. Complaint ¶¶ 15–17. Plaintiff asserts that Cavanaugh exercised full discretion to trade in his accounts and that Cavanaugh's conduct was willful and reckless and that Cavanaugh intended to defraud plaintiff. Complaint ¶¶ 34, 36. Once again, defendant raises Rule 9(b) arguing that plaintiff's allegations in reference to the churning claim are general and conclusory, and that this claim should be dismissed for failure to state fraud with particularity.

■ Churning is excessive trading in a customer's account, disproportionate to the size and character of the account, for the purpose of increasing the broker's commissions. *See, e.g., Moran v. Kidder Peabody & Co.*, 609 F.Supp. 661, 666 (S.D.N.Y.1985), *aff'd mem*, 788 F.2d 3 (2d Cir.1986). In order to state a churning claim under the federal securities laws, the "plaintiff must allege that (1) the trading in his account was excessive in light of his investment objectives; (2) that the broker exercised control over the account; and (3) that the broker acted with intent to defraud or with willful or reckless disregard for the interests of his client." *Siegel v. Tucker, Anthony & R.L. Day, Inc.*, 658 F.Supp. 550, 554 (S.D.N.Y.1987); *Levine v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 639 F.Supp. 1391, 1394 (S.D.N.Y.1986); *Moran, supra*, 609 F.Supp. at 666.

■ To satisfy the first requirement, plaintiff should allege specifically, "what instructions he gave the broker ... on what dates they were conveyed; and whether they were oral, in writing, or both." *Heller v. Rothschild*, 631 F.Supp.

1422, 1424 (S.D.N.Y.1986). Furthermore, the plaintiff should allege what his own investment experience was, what information he conveyed on that subject to the broker and what responses the broker made. *Id.* Plaintiff's churning allegations, however, do not plead the first element of the churning claim consistent with Rule 9(b). Like plaintiff's unsuitability claim, the churning claim also generally alleges misconduct by Cavanaugh during his employment at two successive separate brokerage houses, each of which is also named as a defendant. Plaintiff has failed to specify for each period of Cavanaugh's employment what his investment objectives were, what instructions he gave his broker, what responses or assurances were made and on what dates the above information was conveyed.

■ The second element is that the broker exercised control over the account. To satisfy this element, the plaintiff must allege specifically whether the account was discretionary. *Heller, supra,* 631 F.Supp. at 1425. The Court concludes that plaintiff has satisfied this element since he alleges that Cavanaugh had "full discretion to trade in his accounts." Complaint ¶ 34.

■ The third element is that the broker acted with intent to defraud or with willful or reckless disregard for the interests of his client. The Second Circuit has held that "[c]hurning, in and of itself, may be a deceptive and manipulative device under section 10(b), the scienter required by 10(b) being implicit in the nature of the conduct." *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983). Therefore, the scienter element of churning may be inferred from an annual turnover rate[3] in excess of six. *Heller, supra,* 631 F.Supp. at 1425; *Rush v. Oppenheimer & Co., Inc.,* 592 F.Supp. 1108, 1122 (S.D.N.Y.1984). The plaintiff has adequately alleged an annual turnover rate in excess of six during Cavanaugh's employment at Wolf. Complaint ¶ 15. The plaintiff, however, has failed to allege any turnover rate during Cavanaugh's employment

at Philips. Consequently, the complaint does not adequately allege the third element of a churning claim regarding each defendant.

■ The complaint also must satisfy two additional pleading requirements to satisfy the specificity requirements of Rule 9(b). First, the complaint must set forth the nature, amount and dates of the securities transactions in question. *See Siegel, supra,* 658 F.Supp. at 554; *Vetter, supra,* 481 F.Supp. at 66. Second, the complaint must allege facts sufficient to permit the calculation of the turnover rate of the account and/or the percentage of the account value paid in commissions with regard to each brokerage defendant. *See Siegel, supra,* 658 F.Supp. at 554; *Moran, supra,* 609 F.Supp. at 666; *Vetter, supra,* 481 F.Supp. at 66. These additional factors exist to insure that plaintiff's allegations of excessive trading are specifically plead in conformity with Rule 9(b), but excessive trading is generally assumed if the annual turnover rate exceeds six. *Siegel, supra,* 658 F.Supp. at 554; *Frota, supra,* 639 F.Supp. at 1191; *Moran, supra,* 609 F.Supp. at 666.

■ Although it is not necessary for a plaintiff to set forth every transaction he alleges was excessive, *Siegel, supra,* 658 F.Supp. at 554, the plaintiff here fails to satisfy the first additional pleading requirement. Plaintiff has not adequately plead the nature, amount and dates of the securities transactions that comprise the alleged churning at issue for Cavanaugh's employment at either Philips or Wolf. While it may not even be feasible to include each transaction in the complaint, the plaintiff should have appended to his complaint a list of the allegedly excessive transactions with regard to each brokerage defendant. *See id.* at 554 (plaintiff attached to the complaint a schedule of 206 sales and 128 purchases on his accounts, a description of the name and number of shares traded, the date they were acquired or sold and the time held in the account prior to sale).

---

**3.** The turnover rate "is the ratio of the total cost of purchases made for an account during a given period of time to the amount invested."

*Frota v. Prudential–Bache Securities Inc.,* 639 F.Supp. 1186, 1191 (S.D.N.Y.1986).

The plaintiff has plead sufficient facts to permit the calculation of the turnover rate—thus satisfying the second additional pleading requirement—only with regard to Cavanaugh's employment at Wolf, not his tenure at Philips. Whether a defendant churned the account should be determined by account activity for the relevant time period as a whole. *Siegel, supra,* 658 F.Supp. at 554; *Frota, supra,* 639 F.Supp. at 1191. For the period of Cavanaugh's employment at Wolf, plaintiff plead the overall volume of stock sales, $1.16 million, as compared to the actual worth of the stocks, at $187,000, and alleges an annual turnover rate of more than six. Complaint ¶ 15. These facts are sufficient to permit calculation of the account activity for this specific time period. *See Siegel, supra,* 658 F.Supp. at 554; *Frota, supra,* 639 F.Supp. at 1191; *Moran, supra,* 609 F.Supp. at 666. Furthermore, since Cavanaugh initiated the trades during this period and Wolf was responsible for sending plaintiff monthly statements, these defendants have access to information with which they may try to rebut plaintiff's stated turnover rate. *Siegel, supra,* 658 F.Supp. at 554; *Frota, supra,* 639 F.Supp. at 1191.

By contrast, plaintiff has not alleged sufficient facts to permit computation of the turnover rate and/or the percentage of the account value paid in commissions for the time period of Cavanaugh's employment with Philips. Plaintiff alleges that Cavanaugh churned his account for its entire life from July 1985 through October 1986. Plaintiff does not specify when during this time period Cavanaugh moved from Cohn to Philips. Furthermore, plaintiff provides the overall volume of stock sales, $3 million, but fails to provide the actual amount invested during Cavanaugh's employment with Philips. Nor does plaintiff allege a turnover rate for this period involving defendants Cavanaugh and Philips. The Court concludes that plaintiff has not alleged sufficient facts to satisfy the pleading requirements of Rule 9(b). Consequently, count two is dismissed without prejudice, with leave to replead within thirty days of this opinion.

### The Punitive Damages Claim

█ Plaintiff alleges in counts one, two and four that in trading unsuitable securities and by conducting an excessive volume of trading, Cavanaugh acted knowingly, willfully and recklessly, and with intent to defraud plaintiff. Complaint ¶¶ 27, 36, 47. Plaintiff also asserts that in failing to supervise the trading, Philips and Wolf acted knowingly, willfully and recklessly, in furtherance of the scheme to defraud." Complaint ¶¶ 28, 48. Defendant Wolf argues that plaintiff has not plead sufficient facts to establish a claim for punitive damages under New York common law. Def. Wolf Mem. of Law at 11.

"It is well established that an award for punitive damages is not permissible for violations ... of section 10(b) of the 1934 Act." *Flaks v. Koegel,* 504 F.2d 702, 706 (2d Cir.1974). Furthermore, state law governs the availability of punitive damages for the pendent common law fraud claim. *Juster v. Rothschild,* 554 F.Supp. 331, 334 (S.D.N.Y.1983). The New York Court of Appeals has specified that punitive damages are not recoverable unless "the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives." *Walker v. Sheldon,* 10 N.Y.2d 401, 404, 223 N.Y.S.2d 488, 490, 179 N.E.2d 497, 498 (1961); *see Borkowski v. Borkowski,* 39 N.Y.2d 982, 387 N.Y.S.2d 233, 355 N.E. 2d 287 (1976) (per curiam). Plaintiff's allegations do not meet this standard since the complaint does not indicate such "evil" or "reprehensible" motives.

This Court has dismissed punitive damage claims in securities fraud cases that fall short of the New York standard. *See Zaretsky v. Hutton & Co. Inc.,* 509 F.Supp. 68, 77 (S.D.N.Y.1981) (punitive damage claim dismissed in an action for, *inter alia,* churning, unsuitability and common law fraud where the plaintiff alleged intentional and willful misconduct); *Richardson v. Shearson/American Express Company, Inc.,* 573 F.Supp. 133, 136 (S.D.N.Y.1983) (punitive damage claim dismissed in an action for breach of common law fiduciary duty where the plaintiff alleged willful and wanton misconduct); *Levin, supra,* 1984–

85 Fed.Sec.L.Rep. (CCH) ¶ 92,080 at 91,407 (punitive damages claim dismissed in an action for churning, misrepresentation and common law fraud on the grounds that allegations of churning and misrepresentation do not rise to the level of morally culpable conduct required for imposition of punitive damages). In the present action, plaintiff's allegations do not rise to the level of morally culpable conduct necessary to support a claim for punitive damages under New York law. Accordingly, the claims for punitive damages are dismissed with prejudice.

### The Unregistered Stock Claim

Plaintiff contends in count three that in or about December 1986, Cavanaugh recommended Ashley Books stock to plaintiff and plaintiff purchased the stock. Complaint ¶¶ 18, 19. Plaintiff allegedly received the stock in April 1987, without a written prospectus or any written materials describing the company or the stock. Complaint ¶ 19. Plaintiff asserts that the stock is unregistered and that its offer, sale and delivery constitute violations of sections 5(a) and 5(c) of the 1933 Act. Complaint ¶ 41. In addition, plaintiff asserts that the delivery of the stock without a proper prospectus was in violation of section 5(b) of the 1933 Act. Complaint ¶ 42. Plaintiff seeks damages against Cavanaugh, and Wolf as a controlling person, pursuant to section 15 of the 1933 Act and under section 12(1) of the 1933 Act. As an affirmative defense, defendant Wolf contends that plaintiff's claim is barred by the one-year statute of limitations in section 13 of the 1933 Act. Defendant Wolf argues that the one-year limitations period began to run in December 1986, at the time of the offer and sale at issue. Def. Wolf Mem. of Law at 15. Thus, defendant contends that the time to sue under section 12(1) expired in December 1987, which was approximately three months before plaintiff commenced this action.

Defendant's contention that the offer and sale is the only violation at issue is without merit. Plaintiff clearly alleges three distinct violations under sections 5(a) and 5(c), which occurred at the time of offer, sale and delivery of the unregistered stock. The language of section 5(a)(2) clearly states that unless a registration statement is in effect for a security, it shall be unlawful for anyone "to carry or cause to be carried through the mails or in interstate commerce ... any such security for the purpose of sale, *or for delivery after sale.*" (emphasis added). Indeed, one of the cases on which defendant relies states that the unlawful delivery of stock, after sale, is itself a distinct violation under section 5. *See Eriksson v. Galvin,* 484 F.Supp. 1108, 1119 (S.D.N.Y.1980) (plaintiff's action against broker was time barred because he only alleged unlawful offer and sale of unregistered securities, not unlawful delivery). Since the statute defines "delivery after sale" as unlawful, the statute of limitations would not begin to run until that claim accrues, that is, the date of such delivery. *Bryant v. Uland,* 327 F.Supp. 439, 444 (S.D.Tex.1971) (quoting *Buchholtz v. Renard,* 188 F.Supp. 888 (S.D.N.Y.1960)).

Plaintiff has alleged that the unlawful delivery of the unregistered stock, after sale, occurred in April 1987 and this action was commenced in March 1988. Therefore, plaintiff's claim for unlawful delivery, after sale under section 5(a)(2) has been brought within the one-year statute of limitations set forth in section 13 of the 1933 Act. Similarly, plaintiff's claim for unlawful delivery of the stock without a proper prospectus under section 5(b) has been brought within the one-year statute of limitations. Defendants' *motion to dismiss* with regard to the claim under 5(b) is therefore denied. On the other hand, plaintiff's claims under sections 5(a) and 5(c) are barred by the applicable one-year statute of limitations. These claims under section 5(c) are dismissed with prejudice.

### The Motion to Compel Arbitration

Defendants Philips and Cavanaugh have moved to stay this action pending arbitration and to compel arbitration of plaintiff's claims before the N.Y.S.E., the American Stock Exchange or the National Association of Securities Dealers, pursuant to 9 U.S.C. §§ 1–4. Defendants argue that (1)

**1194**

plaintiff received written margin and option agreements, as well as monthly statements, which contained separate arbitration clauses; and (2) even though plaintiff may not have signed the agreements or objected to the arbitration clause on the back of the monthly statements, his conduct of accepting the benefits of these agreements by receiving margin credit and purchasing options constituted his assent. Def.Mem. of Law at 3–4. Plaintiff objects, claiming that he never received any written agreements from defendants Philips or Wolf. Complaint ¶ 12. Plaintiff argues that there is no evidence that he was aware of the contents of these agreements or adopted their contents when he traded with the defendants. Pl.Mem. of Law in Opp. at 8. Plaintiff further alleges that a second arbitration clause on the back of the monthly statements expressly stated that disputes arising under the federal securities laws should be resolved in litigation, not arbitration. *Id.* at 10–11.

Given the disputed facts in the record, an evidentiary hearing is warranted on the issue of whether an agreement to arbitrate was made. After receiving a petition to compel arbitration,

> [T]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed in arbitration in accordance with the terms of the agreement....

9 U.S.C. § 4. *See also Tehran–Berkeley Civ. & Env. Eng. v. Tippetts–Abbett,* 816 F.2d 864 (2nd Cir.1987) (evidentiary hearing required where a genuine dispute existed as to whether the parties entered into an arbitration agreement); *accord Mowbray v. Moseley, Hallgarten, Estabrook & Weeden,* 795 F.2d 1111, 1115 n. 7 (1st Cir.1986) ("where the making of an arbitration agreement is in issue, the district court is required to hold a hearing to decide disputed facts"). "Until the disputed issue of whether an agreement exists between the parties is resolved by a hearing pursuant to 9 U.S.C. § 4, reference to case law compelling arbitration is premature." *Ken Grisa v. Associates, Inc. v. Redshaw Inc.,* No. 88 Civ. 164, slip op. (N.D.Ill. May 31, 1988) (available on WESTLAW, Allfeds, 1988 WL 58589, at 1).

The existence of a viable agreement to arbitrate is an issue of fact that this Court cannot resolve on the papers presented. After plaintiff's time to replead passes under this opinion, an evidentiary hearing will be scheduled to determine whether an agreement to arbitrate was made between the parties.

### CONCLUSION

For the reasons stated above, the Court grants in part and denies in part defendants' motion to dismiss pursuant to Rule 9(b). This Court grants defendants motion to dismiss plaintiff's punitive damages claims. Court three is dismissed in part for failure to satisfy the statute of limitations. Leave to replead is granted consistent with the Court's opinion within 30 days from the date of this order. An evidentiary hearing will be held pursuant to 9 U.S.C. § 4 to ascertain whether the parties entered into an agreement to arbitrate.

SO ORDERED.