**Fernando S.G. FROTA and Maria Carmen Frota, Plaintiffs,**

v.

**PRUDENTIAL–BACHE SECURITIES, INC., Ahmed Hussein and John F. Rasweiler, Defendants.**

No. 85 Civ. 9698 (WCC).

United States District Court, S.D. New York.

July 16, 1986.

Eduardo F. Lopez, P.C., New York City, for plaintiffs.

Cahill, Gordon & Reindel, New York City, for defendants; Thomas J. Kavaler, Lisa Pearson, Ellen L. Weintraub, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiffs Fernando S.G. Frota and Maria Carmen Frota ("the Frotas") brought this action against Prudential-Bache Securities, Incorporated ("Prudential-Bache"), Ahmed Hussein ("Hussein"), their broker at Prudential-Bache, and John F. Rasweiler ("Rasweiler"), Hussein's supervisor, alleging vi-

olations of section 10(b) of the Securities Exchange Act of 1934 ("the '34 Act"), 15 U.S.C. § 78j(b) (1982), Securities and Exchange Commission rule 10b–5, 17 C.F.R. § 240.10b–5 (1985), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1982), and the laws of the state of New York. Subject matter jurisdiction is predicated upon section 27 of the '34 Act, 15 U.S.C. § 78aa (1982), section 1964 of RICO, 18 U.S.C. § 1964 (1982), the diversity of citizenship of the parties, and the doctrine of pendent jurisdiction.

This matter is now before the Court on defendants' motion to dismiss plaintiffs' complaint pursuant to rule 9(b), Fed.R. Civ.P., for failure to plead fraud with particularity, and pursuant to rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. For the reasons set forth below, plaintiffs' complaint is dismissed with leave to replead as indicated.

*Background*

On a motion to dismiss, the Court must accept as true the facts alleged in the complaint. *See Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (per curiam); *Joyce v. Joyce Beverages, Inc.*, 571 F.2d 703, 706 (2d Cir.), *cert. denied*, 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978). Accordingly, for the purposes of this motion, the relevant facts are as follows:

In November 1981, the Frotas opened a so-called "discretionary account" at Prudential-Bache, over which Hussein, their broker, exercised complete control. Between November 1981 and January 1982, the Frotas transferred a portfolio valued at $2,771,635 from the Chase Manhattan Bank in Switzerland to the Prudential-Bache account. They withdrew $347,000 for their own use; the remaining $2,424,635 was managed and invested solely by Hussein.

Between November 1981 and June 1985, a period of approximately 920 trading days, Hussein made 1,224 purchases and sales of securities for the Frotas' account. Hussein generated $1,900,000 in commissions and more than $2,000,000 in margin charges. When the account was finally liquidated in June 1985, only $69,000 remained. Of the 1,224 transactions for the Frotas' account, 200 were purchases and sales of the same security in a single day; 700 were purchases and sales of the same security within a 30–day period; 165 were purchases and sales of securities for which Prudential-Bache was the sole market-maker.

Plaintiffs' complaint asserts three claims against defendants. Plaintiffs' first claim charges defendants with violations of section 10(b) and rule 10b–5. Plaintiffs allege that defendants made misrepresentations and omissions, engaged in excessive, unauthorized and unsuitable trading, and churned plaintiffs' account. Plaintiffs' second claim charges defendants with violating RICO, and alleges as predicate acts violations of the mail fraud statute, the wire fraud statute, and the federal securities laws. Finally, plaintiffs' third claim charges defendants with common law fraud and breach of fiduciary duty.

As noted above, defendants have moved to dismiss the complaint against them. Defendants advance the following grounds in support of their motion to dismiss plaintiffs' federal securities claim: (1) plaintiffs have not specified the alleged misrepresentations and omissions or the circumstances under which they were made with sufficient detail to satisfy rule 9(b), Fed.R. Civ.P.; (2) to the extent that the alleged misrepresentations consist of assurances that plaintiffs' account would be "properly and prudently managed" they constitute non-actionable "puffing"; (3) to the extent that plaintiffs' "unsuitability" claim is based on the New York Stock Exchange ("NYSE") "Know Your Customer" rule, NYSE rule 405, or the National Association of Security Dealers ("NASD") "Suitability" rule, NASD Rules of Fair Practice art. III, §§ 1, 2, 15(a), 18, it fails to state a claim because no private right of action exists for violations of those rules; (4) to the extent that the securities claim is based on "unauthorized trading," it fails to state a claim or to comply with rule 9(b); and (5) plaintiffs

have not properly pleaded the elements of a claim for churning. In support of their motion to dismiss plaintiffs' RICO claim, defendants advance the following grounds: (1) plaintiffs have not pleaded the underlying fraud with particularity; (2) Prudential-Bache and Rasweiler cannot be held vicariously liable for a RICO violation; (3) Prudential-Bache cannot be both a RICO defendant and the RICO enterprise; and (4) plaintiffs have not adequately alleged a pattern of racketeering activity. Finally, defendants argue that plaintiffs' common law claims should be dismissed because plaintiffs have not pleaded the fraud with particularity.

*Discussion*

### A. The Securities Count

The first of plaintiffs' three counts is a claim under the anti-fraud provisions of the federal securities laws. This count is far from a model of clarity, and it is difficult to discern the precise basis for the securities claim. Construed generously, it suggests four separate bases: (1) misrepresentations and/or omissions of material fact, Complaint ¶¶ 12–13, 18–21; (2) "unauthorized" trading, *id.* ¶¶ 15, 22–25; (3) "unsuitable" trading, *id.* ¶¶ 15, 25–27; (4) churning, *id.* ¶¶ 15, 22–28. Defendants have attacked the sufficiency of each basis for the securities count. I have carefully examined plaintiffs' complaint, and have concluded that the securities count is indeed deficient. It is therefore dismissed with leave to replead as set forth below.[1]

### 1. Misrepresentations and/or Omissions

Paragraph 12 of the complaint tracks verbatim the language of rule 10b–5. Among other things, it alleges that defendants "made untrue statements of material facts and omitted facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." Paragraph 13 alleges that defendants induced plaintiffs to open the Prudential-Bache account "by means of misleading representations and statements, and by omitting to state material facts." Paragraphs 18 and 19 allege that plaintiffs "advised defendants that their desire was to have $2,000,000 invested at the best judgment of [defendants] and the balance ... placed in time deposits," and that defendants assured plaintiffs "that these instructions would be carried out to the letter, and that the account would be properly and prudently managed." Paragraph 20 alleges that Hussein repeatedly held himself out not only as plaintiffs' broker, but as their friend, confidant, and financial advisor, and as a person whom plaintiffs "could trust to look after their interests." Finally, paragraph 21 alleges that on numerous occasions Hussein indicated "that everything was in order and that transactions were being carried out in a normal and reasonable manner."

 These allegations are not sufficient to comply with rule 9(b), Fed.R.Civ.P., which requires plaintiffs to specify

(1) precisely what statements were made in what documents or oral misrepresentations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the context of such statements and the manner in which they misled the plaintiffs, and (4) what the defendants obtained as a consequence of the fraud.

*Moran v. Kidder Peabody & Co.*, 609 F.Supp. 661, 665 (S.D.N.Y.1985), *aff'd mem.*, 788 F.2d 3 (2d Cir.1986); *Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978); *see also Goldman v. Belden*, 754 F.2d 1059 (2d Cir.1985). Plaintiffs' general allegations do not pro-

---

**1.** While I have generously construed the first count of the complaint as having four potential bases, in their papers in opposition to defendants' motion to dismiss, plaintiffs address only the churning claim. The Court infers from this that churning is the only serious securities claim that plaintiffs intend to make. If that is the case, when plaintiffs replead this count, they should eliminate the excess verbiage relating to misrepresentations and unsuitable or unauthorized trading and concentrate on adequately and clearly alleging the elements of churning.

vide defendants with adequate notice of the alleged misrepresentations and omissions. Plaintiffs have not adequately alleged the content of the misrepresentations, when they were made, or whether they were made orally or in writing.

■ Moreover, to the extent that the alleged misrepresentations consisted merely of assurances that plaintiffs' account would be "properly and prudently managed," that transactions were being carried out in a "reasonable manner," or that Hussein was not only plaintiffs' broker, but their "friend, confidant and financial advisor" and a person whom plaintiffs "could trust to look after their interests," they were "nothing more than the common puff of a salesman," and not actionable under section 10(b) or rule 10b–5. *Cf. Bowman v. Hartig*, 334 F.Supp. 1323, 1328 (S.D.N.Y.1971). Accordingly, to the extent that plaintiffs allege a securities claim based on a misrepresentation theory, it is dismissed with leave to replead within twenty days of the date of this Opinion and Order.

### 2. *"Unauthorized" Trading*

■ Plaintiffs' complaint also alleges that defendants initiated "unauthorized" transactions for plaintiffs' account. Complaint ¶¶ 15, 22–25. It is difficult indeed to see how any of the transactions were unauthorized. The Prudential-Bache account was a discretionary account, Complaint ¶¶ 13, 17, 22, and plaintiffs have not alleged that they placed any restrictions on defendants' trading. What plaintiffs appear to be alleging is that defendants were not authorized to abuse their account by making excessive trades. These allegations are more properly a part of plaintiffs' churning claim which is discussed below, and the Court will treat them as such. Accordingly, to the extent that plaintiffs' complaint attempts to allege a claim for unauthorized trading, it fails to state a claim, and is dismissed.

### 3. *Violation of NYSE and NASD Rules*

■ Plaintiffs' complaint also appears to allege a securities fraud claim based on

defendants' violations of NYSE rules 342, 405, and 408, and article III, sections 1, 2, 15(a), 18, and 27 of the NASD Rules of Fair Practice. Complaint ¶¶ 25–27. Defendants contend that there is no implied private cause of action under these rules.

Although some courts had found an implied private right of action under these and similar rules in the wake of *J.I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), *see, e.g., Faturik v. Woodmere Sec., Inc.*, 442 F.Supp. 943, 946 (S.D.N.Y.1977), the more recent and persuasive trend is that no private right of action exists for alleged violations of these rules, *see, e.g., Klock v. Lehman Bros. Kuhn Loeb, Inc.*, 584 F.Supp. 210, 217–18 (S.D.N.Y.1984); *Colman v. D.H. Blair & Co.*, 521 F.Supp. 646 (S.D.N.Y.1981); *see also Carrott v. Shearson Hayden Stone, Inc.*, 724 F.2d 821, 823 (9th Cir.1984) (per curiam); *Thompson v. Smith Barney, Harris Upham & Co.*, 709 F.2d 1413, 1419 (11th Cir.1983). Accordingly, to the extent that plaintiffs' complaint attempts to state a federal securities claim for violations of these NYSE and NASD rules, the claim must be dismissed.

### 4. *Churning*

■ The final basis for plaintiffs' securities fraud count is "churning." "Churning occurs when a securities dealer creates commissions 'by inducing transactions in the customer's account which are disproportionate to the size and character of the account.'" *Moran v. Kidder Peabody & Co.*, 609 F.Supp. 661, 666 (S.D.N.Y.1985), *aff'd mem.*, 788 F.2d 3 (2d Cir.1986) (quoting *Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1069 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978)). In order to state a churning claim under the anti-fraud provisions of the securities laws, a plaintiff must allege in his complaint the following three elements: (1) that the trading in his account was excessive in light of his investment objectives; (2) that the broker exercised control over the account; and (3) that

the broker acted with intent to defraud or with willful or reckless disregard for the interests of his client. *Id.; Rush v. Oppenheimer & Co., Inc.,* 592 F.Supp. 1108, 1112 (S.D.N.Y.), *vacated in part on other grounds on reh'g,* 596 F.Supp. 1529 (S.D.N.Y.1984).

Defendants claim that plaintiffs have not adequately pleaded the elements of a churning claim as is required by rule 9(b), Fed.R.Civ.P. In particular, they assert that plaintiffs (i) have not identified which transactions form the basis of the churning claim; (ii) have not provided sufficient information from which to determine whether or not trading was excessive; and (iii) have not provided sufficient information as to what plaintiffs' investment goals and objectives were.

■ Defendants' first two contentions are without merit. It is not necessary for a plaintiff who alleges churning to set out each and every transaction he contends was excessive. The essence of a churning claim is not a particular trade or group of trades, but rather the overall amount of trading in the customer's account in light of such considerations as market conditions, size of commissions, and sophistication of the customer. *Darrell v. Goodson,* [1979–1980 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 97,349, at 97,326 (S.D.N.Y. Apr. 10, 1980). Whether defendants churned plaintiffs' account must be determined by examining the account activity for the relevant time period as a whole. It is clear from plaintiffs' complaint that they allege that defendants churned their account during the entire life of the account, November 1981 through June 1985. *See* Complaint ¶ 15(a).

■ I also need not linger long on defendants' contention that plaintiffs have not provided sufficient information from which to determine whether trading was excessive. Defendants suggest that plaintiffs must plead facts from which the "turnover ratio" for plaintiffs' account may be computed. The turnover ratio is the ratio of the total cost of purchases made for an account during a given period of time to the amount invested. *Newburger, Loeb & Co. v. Gross,* 563 F.2d 1057, 1070 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). Excessive trading is generally held to exist when there is an annual turnover rate in an account in excess of six. *Moran v. Kidder Peabody & Co.,* 609 F.Supp. 661, 666 (S.D.N.Y.1985), *aff'd mem.,* 788 F.2d 3 (2d Cir. 1986). Since defendants initiated all the trades during the relevant period, and prepared confirmations of each transaction as well as monthly statements, they are clearly in a position to compute any statistic they wish. *See Mauriber v. Shearson/American Express, Inc.,* 567 F.Supp. 1231, 1238 (S.D.N.Y.1983).

■ However, defendants' third contention is more troubling. In order to state a claim of churning, plaintiffs must allege that the trading in their account was excessive *in light of their investment objectives.* Plaintiffs allege that defendants "intentionally and without [plaintiffs'] authorization and knowledge, and *in reckless disregard of,* and contrary to, [*plaintiffs'] instructions and objectives, given their investment goals and advanced age,* engaged in excessive, unauthorized and unsuitable trading ... and 'churned' the account for purposes of generating commissions for themselves." Complaint ¶ 15. Nowhere have plaintiffs stated what their investment objectives were, or that those objectives were made known to defendants when the Prudential-Bache account was opened. Plaintiffs have alleged only (i) that they are elderly, retired, foreign citizens, and "inexperienced and unsophisticated" investors, Complaint ¶ 6; and (ii) that they "advised the defendants that their desire was to have $2,000,000 invested at the best judgment of the defendants ... and the balance ... placed in time deposits," *id.* ¶ 18. Plaintiffs are in the best position to set out what their investment goals and objectives were, and they have not done so. In view of their age and lack of investment experience, the Court might assume that plaintiffs were interested in a safe, steady stream of retirement income.

However, it is possible that they were interested in more speculative investments, and defendants are entitled to the benefit of that information in preparing their defense to the churning claim. The churning claim is therefore dismissed with leave to replead within twenty days of the date of this Opinion and Order. Plaintiffs should state what their investment goals and objectives were and that this information was communicated to defendants when the Prudential-Bache account was opened.[2]

## B. *The RICO Count*

■ The second of plaintiffs' three counts is a claim under RICO. Plaintiffs allege as predicate acts violations of the federal securities laws and the mail and wire fraud statutes. Plaintiffs' RICO count is deficient for a variety of reasons. First, it does not comply with rule 9(b), Fed.R.Civ.P. The predicate act of securities fraud is set out in paragraph 34, which merely incorporates by reference the allegations of the securities fraud count. In light of my conclusion above that the securities count fails to state a claim to the extent that it is based on anything other than churning, and fails to comply with rule 9(b) to the extent that it is based on churning, it cannot form a predicate act for the RICO count. Plaintiffs also have not adequately pleaded the predicate acts of mail and wire fraud. The mail and wire fraud allegations are set out in paragraphs 32 and 33 of the complaint. These paragraphs merely track the language of the mail and wire fraud statutes. Nowhere in the complaint do plaintiffs allege the specifics of any use of the mails or wires. These allegations are therefore insufficient to satisfy rule 9(b).

■ Second, the RICO count must be dismissed as against Rasweiler and Prudential-Bache because they did not play any part in the alleged misdeeds. Plaintiffs allege merely that Rasweiler and Prudential-Bache failed to supervise Hussein and recklessly disregarded his wrongdoing. Complaint ¶¶ 26–27. However, in order to connect Rasweiler or Prudential-Bache with a RICO claim, plaintiffs would have to establish facts which show *criminal* liability on their part for Hussein's acts, because section 1961 defines acts to be racketeering only if they among the enumerated felonies punishable under the laws of the United States. *See Moss v. Morgan Stanley Inc.*, 553 F.Supp. 1347, 1362 (S.D.N.Y.) (Pollack, J.), *aff'd*, 719 F.2d 5 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Plaintiffs cannot argue that Rasweiler or Prudential-Bache is criminally liable for Hussein's acts by reason of section 20 of the '34 Act. In order for a controlling person to be held criminally liable under that section, it must be shown that the controlling person knowingly used the controlled person to commit the illegal act. *Id.; see also Rush v. Oppenheimer & Co., Inc.*, 628 F.Supp. 1188, 1196 & n. 4 (S.D.N.Y.1985).

■ Third, the RICO count must be dismissed as against Prudential-Bache because Prudential-Bache may not be simul-

---

2. Defendants suggest that even if pleaded with particularity, the churning claim must be dismissed as to Rasweiler and Prudential-Bache because they cannot be derivatively liable for Hussein's misdeeds. Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint at 16–17, 29. However, under section 20 of the '34 Act, a controlling person is liable for damages resulting from a controlled person's securities fraud if the controlling person was negligent in supervising the controlled person. *See Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705 (2d Cir.), *cert. denied*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980); *Moss v. Morgan Stanley Inc.*, 553 F.Supp. 1347, 1357 (S.D.N.Y.) (Pollack, J.), *aff'd*, 719 F.2d 5 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *see also Henricksen v. Henricksen*, 640 F.2d 880, 884–85 (7th Cir.), *cert denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 637 (1981); *Hecht v. Harris, Upham & Co.*, 430 F.2d 1202, 1210 (9th Cir.1970) (brokerage firm liable under section 20 for broker's churning). *But cf. infra* pp. 1192–93 (*criminal* liability under section 20 requires showing that controlling person knowingly used controlled person to commit the illegal act).

taneously the "enterprise" and the "person" who conducts the affairs of the enterprise through a pattern of racketeering activity. *Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). Plaintiffs' attempt to circumvent this principle by alleging that the "Wall Street Branch" of Prudential-Bache is the enterprise is of no avail. *Rush v. Oppenheimer & Co., Inc.*, 628 F.Supp. 1188, 1194 (S.D.N.Y.1985); *see also United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190–91 (4th Cir. 1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

Finally, in light of the fact that plaintiffs have not adequately alleged even one predicate act, I think it premature to address at this juncture defendants' argument that plaintiffs have not adequately alleged a "pattern" of racketeering activity.

## C. *The Common Law Count*

 ██ Plaintiffs' third count alleges common law fraud and breach of fiduciary duty. It merely incorporates the allegations of the securities fraud and RICO counts. Complaint ¶¶ 36–37. Insofar as I have concluded that plaintiffs have not complied with the requirements of rule 9(b), Fed.R.Civ.P., in pleading these counts, it should be apparent that the common law count must be dismissed for the same reason. Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty—statutory, common law, tort, contractual, or fiduciary. *Shapiro v. Miami Oil Producers, Inc.*, 84 F.R.D. 234, 236 (D.Mass.1979).

## *Conclusion*

For the foregoing reasons, I have concluded that plaintiffs' complaint must be dismissed in its entirety. Plaintiff may replead as indicated within twenty days from the date of this Opinion and Order.

SO ORDERED.