Herbert WASSERMAN, Plaintiff,

v.

MAIMONIDES MEDICAL CENTER, Joseph Cunningham, Barry Spero, Sol Ciprut, Jacob Solome, Gilbert Wise, Joyce Leahy, Joel Horovitz, Enrico Ascer, and Shiela Namm, Defendants.

No. 95 CV 5357(SJ).

United States District Court,
E.D. New York.

July 18, 1997.

Schneider, Harris & Harris by Sondra Harris, Woodmere, NY, for Plaintiff.

Wilson, Elser, Moskowitz, Edelman & Dicker by Ricki· E. Roer, New York City, for Defendants.

### MEMORANDUM & ORDER

JOHNSON, District Judge:

Before the Court is defendants' motion to dismiss the complaint ·for lack of subject matter· jurisdiction and for failure· to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). ·Defendants also request the imposition of sanctions pursuant to Fed.R.Civ.P. ·11. For the reasons stated below, defendants' motion to dismiss is granted, but their request for sanctions is denied. Additionally, plaintiff is granted 30 days from·the date of this Memorandum and Order to file an amended complaint solely against ·defendant Dr. Cunningham.

### BACKGROUND

Dr. Herbert Wasserman ("plaintiff" or "Dr. ·Wasserman") has· brought this action against the hospital at which he works, Maimonides Medical Center (the "Hospital"), and a number of individuals who .were involved in a peer review process that focused on Dr. Wasserman and .resulted ·in a two-week suspension and ·one-year monitoring of him.

Plaintiff alleges in his complaint that since 1990, Dr. Joseph Cunningham, the director of the Hospital's surgery department, has harassed plaintiff and conspired with others to exclude him from the Hospital's vascular surgery division in a variety of ways. Complaint ¶¶ 28–30. Dr. Cunningham's ·harassment of plaintiff has allegedly included: the arbitrary hiring of another doctor ·instead of plaintiff to operate a laboratory, Complaint ¶ 26; the exclusion of plaintiff from lectures and meetings regarding the vascular surgery division, Complaint ¶ 29; and the discriminatory punishment of plaintiff, Complaint ·¶ 30.

Plaintiff claims that Dr. Cunningham has told third parties that he dislikes plaintiff; "would never let [plaintiff] thrive at [the ·Hospital]", and "intended to destroy [plaintiff's] life." Complaint ¶ 24.

According to the complaint, Dr. Cunningham's animosity toward plaintiff resulted directly in the baseless punishment of him in June 1994. Specifically, Dr. Wasserman ·claims that Dr. Cunningham conspired with others to reopen a peer review process that regarded plaintiff's treatment of a patient. The peer review process had initially begun when one of Dr. Wasserman's patients died after he had operated on her in .April 1994. Complaint · ¶¶ 34–36. Two committees had reviewed the events surrounding plaintiff's surgery of the patient and her subsequent death, and both committees had determined that· plaintiff's conduct satisfied the Hospital's standard of medical care. Complaint ¶ 36. Despite these determinations, plaintiff alleges that Dr. Cunningham· made ·"false and fraudulent" statements in letters to, and at ·meetings with, others at the Hospital in order to reopen the review process. Complaint ¶ 36.

Plaintiff claims that although Dr. Cunningham and other individual defendants knew that plaintiff .had satisfied the appropriate standard of .care, they ·continued with .a ·third review process and eventually manipulated others ·involved in that ·process to discipline plaintiff. In particular, plaintiff claims that Dr. Cunningham conspired with others, including Shiela Namm, to stack the third review· board with Dr. Cunningham's friends or colleagues—defendants ·Dr. Ciprut, Dr. Solome, and Dr. Wise—so that the committee would baselessly decide to discipline plaintiff. Complaint ¶ 39. As. a direct result of these. allegedly fraudulent actions, plaintiff was disciplined by the Hospital with a two-week suspension and· one-year monitoring program.

. Plaintiff also claims· that Dr. Cunningham and ·other· defendants ·distorted the appellate review of that· disciplinary ·decision by: telling other doctors at the Hospital to approve the disciplinary· actions for the wrong reasons, Complaint ¶ 42; "secretly and unilaterally circulat[ing] various portions of plaintiff's

personnel file to [the] Appellate Review Hearing Committee," Complaint ¶ 44; and improperly refusing to allow plaintiff's expert witnesses to testify at the appeal hearing, Complaint ¶¶ 47, 48.

Finally, plaintiff alleges that defendant Dr. Enrico Ascer falsely stated to nurses and other staff in the Hospital operating room that plaintiff no longer had hospital privileges, and that the defendant Hospital failed to sanction Dr. Ascer for this ethical violation. Complaint ¶¶ 51–54.

Based on these allegations, Dr. Wasserman has filed a complaint against the Hospital, Dr. Cunningham, and at least six other individual defendants. The complaint sets forth nine causes of action including violations of the Racketeer Influence Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, denial of Constitutional due process and equal protection, and various New York State law claims such as breach of contract, injurious falsehood, and *prima facie* tort. Complaint ¶¶ 56–84. Plaintiff requests compensatory and punitive damages, each in the amount of five million dollars, as well as treble damages for the RICO violations, a permanent injunction "preventing defendants' interference with plaintiff's constitutional rights to practice his profession," and attorney's fees and costs.

Defendants have moved to dismiss the complaint against them for failure to state a claim upon which relief can be granted, and for lack of subject matter jurisdiction. Defendants also request that the Court impose sanctions on plaintiff's attorneys for filing frivolous claims pursuant to Fed.R.Civ.P. 11.

## DISCUSSION

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Green v. Maraio*, 722 F.2d 1013, 1015–16 (2d Cir.1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The court must accept as true all material facts well pleaded in the complaint and must construe all reasonable

inferences in the light most favorable to the plaintiff. *In re Energy Systems Equipment Leasing Securities Litigation*, 642 F.Supp. 718, 723 (E.D.N.Y.1986) (citations omitted).

■ In bringing their motion to dismiss, defendants submitted a variety of documents, and plaintiff countered with his own exhibit submissions. While some of the exhibits are documents that the complaint explicitly mentions, it remains unclear why others have been submitted. In certain situations, when a party seeks to introduce "affidavits, depositions or other extraneous documents not set forth in the complaint for the court to consider on a Rule 12(b)(6) motion," *Cortec Industries Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992), conversion of the motion to a Rule 56 summary judgment motion may be appropriate. *See id.*; Fed.R.Civ.P. 12(b). Conversion is appropriate, however, only when the parties should reasonably recognize the motion is one for summary judgment. *See Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir.1990).

Although the defendants discuss and dispute the facts surrounding the peer review process that resulted in the disciplining of plaintiff, they apparently do so because they fail to understand the standard that applies to a motion to dismiss. Defendants consistently refer to their motion as one to dismiss the complaint pursuant to Rule 12(b)(1) and (6), and never request that the Court convert the motion. Defendants also do not present their factual arguments with citations to any of their documentary exhibits. Additionally, although plaintiff countered with his own exhibit submissions, he properly sets forth the standard by which this Court must review a motion to dismiss and focuses his opposition argument on the sufficiency of the pleadings, rather than on the evidentiary submissions. Accordingly, the Court will not convert this motion to one for summary judgment, and has considered only the face of the pleadings for this Rule 12(b) motion.

## I. *RICO Claims.*

■ To state a cause of action under RICO, Dr. Wasserman must allege (1) that

each defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate ·commerce. *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). "Racketeering activity" is defined as "any act or threat involving ... extortion ... which is chargeable under State law and punishable by imprisonment for more than one year; ... [and] any· act which is indictable under any of the following provisions of title 18, United States Code:. ... section 1341 (relating to mail fraud)...." 18 U.S.C. § 1961(1).

■ Where the predicate racketeering acts of a RICO claim sound in fraud, as here, the pleading of those predicate acts must satisfy the particularity requirement of Fed. R.Civ.P. 9(b) ("Rule 9(b)"). *See Gregoris Motors v. Nissan Motor Corp.,* 630 F.Supp. 902, 912–13 (E.D.N.Y.1986). Allegations of mail fraud must also specify the use of the mails with particularity. *Frota v. Prudential–Bache Securities, Inc.;* 639 F.Supp. 1186, 1192 (S.D.N.Y.1986).

■ Rule 9(b) ·provides that "[i]n all averments of fraud or mistake, ·the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind· of a person may be averred generally." Rule 9(b). Allegations of fraud must therefore specify ·the fraudulent statement, the time, place, speaker, and ·content of the alleged misrepresentations, *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986) (citations omitted), and factual circumstances giving rise ·to a "strong inference" that the defendant had the requisite fraudulent intent. *Ouaknine v. MacFarlane,* 897 F.2d 75, 80 (2d Cir.1990) (citations ·omitted). ·Specifically, the· ·complaint must allege "(1) specific· facts; · (2) sources ·that· support the alleged specific facts; and (3) a basis from which ·an inference of fraud may fairly be drawn." *Crystal v. Foy,* 562 F.Supp. 422, 425 (S.D.N.Y.1983).

■ In order to establish a "pattern of racketeering. activity," a plaintiff must allege at least two predicate acts that occurred within ten years of each other, 18 U.S.C. § 1961(5), and "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989).

### A. Failure to Allege Two Predicate Acts for All··Defendants Except Dr. Cunningham.

·Defendants argue that the RICO claims against all defendants must be dismissed because the ·complaint fails to allege sufficient predicate acts against each defendant, ·and fails to allege any pattern of racketeering· activity. Specifically, defendants argue that the basis for plaintiff's complaint is solely a peer ·review process that lasted for a short, closed period of time, *see Purgess v. Sharrock,* 806 F.Supp. 1102 (S.D.N.Y.1992) (finding that a "pattern of racketeering activity" could not ·be established based· on allegations of ·conduct occurring only over a period of a few months), and that the letters which are part of the ·"mail fraud" allegations are straightforward business · communications that do not constitute any form of fraud. ·See *O'Malley v. New York City Transit Authority,* 896 F.2d 704, 706–07 (2d Cir.1990)· (finding that innocuous business communications, without more, fail to establish a mail fraud claim); *Asbeka Industries v. Travelers Indemnity Co.,* 831 F.Supp. 74, 89 (E.D.N.Y. 1993) (same).

To say· the least, plaintiff's complaint is ·inartfully pleaded. It is not entirely clear, for example, which individual defendants are being sued. The "Parties, Jurisdiction, and Venue" section ·of the complaint lists the following defendants: the Hospital, Dr. Cunningham, Dr. Ciprut, Dr. Solome, Dr. Wise, Dr. Horovitz, Joyce Leahy, and Shiela Namm. Complaint ¶¶ 8–13. On the other ·hand, the caption of the complaint fails to list· Ms. Leahy· and· Dr. Horovitz as defendants, but does list the additional individual defendants, Dr. Enrico·Ascer and Dr. Barry Spero. Finally, the body of the complaint fails

to mention how, if at all, Dr. Spero or Ms. Leahy is involved in any of the events that form the basis for plaintiff's claims, but does mention yet another otherwise unlisted defendant, Dr. Harry Adler. Complaint ¶ 40.

Given the inaccuracy surrounding even this most basic element of a complaint, it is not surprising that plaintiff fails to allege sufficient predicate racketeering acts against any of the defendants other than Dr. Cunningham.

■ Although plaintiff claims in his opposition memorandum of law that the predicate acts alleged in the complaint include violations of federal and state extortion law as well as federal mail fraud, the complaint is devoid of any mention of which New York State extortion law has been violated or even what that law might be. The complaint states that defendants "attempted to extort plaintiff's resignation," Complaint ¶ 2, but fails—as does plaintiff's memorandum of law in opposition to the motion to dismiss—to address how defendants thereby interfered or attempted interference with commerce by the "obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Accordingly, the Court does not find that any predicate acts of extortion are properly alleged in the complaint and addresses only plaintiff's attempts to allege that defendants committed predicate acts of mail fraud.

■ 18 U.S.C. § 1341, the United States Code section prohibiting mail fraud provides: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises . . . places in any post office or authorized depository for mail matter . . . or takes or receives therefrom . . . shall be fined. . . ." 18 U.S.C. § 1341. It is well settled that to establish mail fraud, plaintiff must allege that the defendant (1) participated in a scheme to defraud; (2) knowingly used the mails to further the scheme; and (3) had the specific intent to defraud. *United States v. Rodolitz*, 786 F.2d 77, 80 (2d Cir.), *cert. denied*, 479 U.S. 826, 107 S.Ct. 102, 93

L.Ed.2d 52 (1986). Allegations of mail fraud must also specify the use of the mails with particularity. *Frota v. Prudential–Bache Securities, Inc.*, 639 F.Supp. 1186, 1192 (S.D.N.Y.1986). *See also* Rule 9(b).

■ the Court must read the complaint under a standard that is favorable to the plaintiff, the allegations set forth therein still fail to set forth *any* predicate racketeering acts of mail fraud for defendants Joyce Leahy, Drs. Spero, Ascer, Solome, and Wise. As noted above, there is no mention of how either Ms. Leahy or Dr. Spero are involved in this action, although the complaint states generally that Ms. Leahy is vice president for legal affairs at the Hospital. Complaint ¶ 11. Similarly, Dr. Solome and Dr. Wise are mentioned only once in the complaint when they are identified as members of the hearing panel compiled by the Hospital to hear charges against plaintiff. Complaint ¶¶ 10, 36. Finally, although the complaint sets forth several allegations of harassment against Dr. Ascer, none of them include an allegation that might be interpreted to establish that he "knowingly used the mails to further the [fraudulent] scheme." *See* Complaint ¶¶ 26, 29, 51.

As for defendants Shiela Namm, Dr. Ciprut, Dr. Horovitz, and the Hospital, even an extremely liberal reading of the complaint would establish that each of these defendants' involvement was limited to one predicate act of mail fraud. Ms. Namm's involvement in the action was her receipt, through the United States mail, of one letter from Dr. Cunningham. Complaint ¶ 37. Dr. Ciprut apparently mailed one letter that explained his denial of plaintiff's request to present expert witnesses at the appeal hearing. *See* Complaint ¶¶ 10, 47, 48. Dr. Horovitz may have mailed a letter requesting the reopening of the peer review process, although it is not clear that he did so. Complaint ¶ 36 (stating that Dr. Horovitz wrote a letter with Dr. Cunningham, but then quoting the letter to indicate that only Dr. Cunningham wrote it). Finally, the Hospital's involvement in a predicate act is explicitly described only by a letter that was sent regarding Dr. Ascer's unethical statements to operating room staff

regarding plaintiff's status. Complaint ¶¶ 51–54. All of the above allegations of mailings appear to involve only "routine, innocuous, business communications", that fail to support a mail fraud claim. *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 707 (2d Cir.1990). Even if the Court were to accept that these letters establish a single mail fraud act against each of these four defendants, plaintiff still fails to allege a RICO cause of action against them because he fails to allege that each defendant undertook the requisite *two* predicate acts of mail fraud.

Strangely enough, the complaint contains bare bone allegations of two instances of the use of the mails by Dr. Adler—the individual who is mentioned as a defendant in only one paragraph of the complaint, Complaint ¶ 40, but is not listed among the "parties" to the complaint, or in any of the captions to this case. Specifically, the complaint alleges that Dr. Adler received one letter via U.S. mail from Dr. Cunningham, Complaint ¶ 36, and mailed one letter dated June 1, 1994 that stated the results of the third peer review committee meeting. Complaint ¶ 40. It is clear, however, that these letters are "routine, innocuous, business communications." *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 707 (2d Cir.1990). With no other allegations that Dr. Adler participated in a fraudulent scheme or had any intent to defraud, these two instances of mail use fail to support claims of mail fraud. *See United States v. Rodolitz*, 786 F.2d 77, 80 (2d Cir.) (stating the elements of mail fraud), *cert. denied*, 479 U.S. 826, 107 S.Ct. 102, 93 L.Ed.2d 52 (1986).

█ Plaintiff has also completely failed to properly allege that any defendant other than Dr. Cunningham was involved in a "pattern of racketeering activity." As stated above, to establish a pattern of racketeering activity, plaintiff must not only show that each defendant was involved in two predicate acts, but also "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). Plaintiff must adequate-

ly allege a pattern of racketeering acts as to each defendant. *See, e.g., Morin v. Trupin*, 747 F.Supp. 1051, 1065 (S.D.N.Y.1990) (by using pleadings that do not differentiate between defendants, "plaintiffs neglect that the 'focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise'") (quoting *U.S. v. Persico*, 832 F.2d 705, 714 (2d Cir.1987), *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1995, 1996, 100 L.Ed.2d 227 (1988)).

█ Each defendant's involvement in the conduct set forth in the complaint, other than Dr. Ascer (for which no predicate act is alleged) and Dr. Cunningham, was limited to approximately three months or less, the time in which the peer review process at the Hospital took place. Additionally, there are no allegations which establish a threat of continued mail fraud. The Supreme Court has clearly stated that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement" of the RICO "pattern of racketeering activity" element. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. at 242, 109 S.Ct. at 2902.

In short, plaintiff has completely failed to properly allege RICO violations against all of the defendants other than Dr. Cunningham. Given the paucity of involvement by most of these defendants in *any* wrongdoing, much less a pleading with particularity of how these defendants may have committed mail fraud, *see* Rule 9(b), the Court declines to allow plaintiff the opportunity to replead its allegations against these defendants. The RICO claims against them are therefore dismissed with prejudice.

B. *RICO Claims against Dr. Joseph Cunningham.*

Defendants have broadly argued that the RICO claims against all of them must be dismissed. Defendants, however, have ignored a number of allegations set forth specifically against Dr. Cunningham, which, taken as true, may help to establish both the mail fraud predicate acts and a pattern of racketeering activity. In addition to alleging that Dr. Cunningham undertook three predi-

cate acts of mail fraud over a few weeks in 1994, plaintiff alleges that Dr. Cunningham expressed animus toward him in 1990, and acted on that animus to harass and exclude him from various Hospital activities. Complaint ¶¶ 24–30. These latter allegations open the time frame of the complaint to a course of years, and may help establish a "pattern of racketeering activity" against Dr. Cunningham.[1] *See United States v. Indelicato,* 865 F.2d 1370, 1383 (2d Cir.) (*en banc*) ("[W]here the virtual simultaneity of two acts suggests that they are related, the timing does not negate the existence of a pattern; rather, evidence of continuity or the threat of continuity will simply have to come from facts external to those two acts."), *cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989).

Nevertheless, plaintiff's RICO claims against Dr. Cunningham still fail. Accepting plaintiff's allegations as true, and construing all reasonable inferences in his favor, the Court finds that the complaint fails to satisfy the specificity requirement of Rule 9(b) with respect to its allegations of mail fraud.

As already noted above, in order to establish mail fraud, plaintiff must allege that the defendant (1) participated in a scheme to defraud; (2) knowingly used the mails to further the scheme; and (3) had the specific intent to defraud. *United States v. Rodolitz,* 786 F.2d 77, 80 (2d Cir.), *cert. denied,* 479 U.S. 826, 107 S.Ct. 102, 93 L.Ed.2d 52 (1986).

■ The complaint fails to set forth with any particularity the "false or fraudulent pretenses, representations, or promises" that were made by Dr. Cunningham, and which are required to establish a "mail fraud" predicate act. 18 U.S.C. § 1341. The complaint does describe, in *general* terms, certain aspects of the fraudulent scheme. For exam-

ple, it states that the general purpose of the fraudulent scheme was to ostracize plaintiff from the Hospital, and the general means of doing so was to reopen the peer review process after two review committees had already determined not to discipline plaintiff. Additionally, the complaint identifies three letters which were sent via United States mail in furtherance of the scheme: (1) Dr. Cunningham's letter to Dr. Adler, dated May 20, 1994, requesting the reopening of the review process, Complaint ¶ 36; (2) Dr. Cunningham's letter to Shiela Namm, dated May 17, 1994, requesting the same, Complaint ¶ 37; and (3) Dr. Cunningham's letter to plaintiff, dated June 10, 1994, informing him of the disciplinary action to be taken against him, Complaint ¶ 40.[2]

Despite these general allegations, and a list of three letters that might have been mailed in furtherance of the fraudulent scheme, the complaint fails to set forth the specific fraudulent acts, statements, or omissions made by defendant Dr. Cunningham. In short, the complaint provides a motive for Dr. Cunningham to undertake a scheme of fraud to get rid of plaintiff—*i.e.,* his dislike of plaintiff, Complaint ¶¶ 24, 27—and a "clear opportunity" for him to commit fraud on third parties, *see Wiener v. Napoli,* 760 F.Supp. 278, 284 (E.D.N.Y.1991) (citing *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 49 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650(1988)), but does not detail what specific misrepresentations Dr. Cunningham made in committing the fraud. Instead, the complaint sets forth only general or conclusory allegations that fraudulent statements were made. The complaint therefore fails to provide the particularity regarding the alleged fraud as required by Rule 9(b). Because of this failure, the complaint is dismissed

---

1. These allegations of harassment dating back to 1990 also refer to defendant Dr. Ascer. As noted above, however, there are simply *no* predicate acts of mail fraud alleged against Dr. Ascer in any other part of the complaint, and therefore the alleged 1990 acts still do not affect the Court's dismissal of the RICO claims against Dr. Ascer.

2. Plaintiff also attempts to allege that a fourth letter was sent in furtherance of the scheme to

defraud. Specifically, the complaint states that "Dr. Cunningham sent out a letter which was openly circulated throughout the [H]ospital stating that plaintiff had restricted privileges at the [H]ospital for a period of two weeks and stating he was no longer on the on-call list." Complaint ¶ 50. There is no allegation, however, that this letter was sent via the United States mail. *See Frota v. Prudential–Bache Securities, Inc.,* 639 F.Supp. 1186, 1192 (S.D.N.Y.1986).

against defendant Dr. Cunningham for failure to comply with Rule 9(b) with leave to amend the complaint against him within 30 days of the date of this Memorandum and Order.[3]

### C. *RICO Conspiracy Claim.*

 18 U.S.C. § 1962(d) makes it unlawful for any person to conspire to violate § 1962(a), (b), or (c). To state a RICO claim under subsection (d), plaintiff must establish that each defendant agreed personally to commit at least two predicate acts. *United States v. Teitler,* 802 F.2d 606, 612-13 (2d Cir.1986) (citing *United States v. Ruggiero,* 726 F.2d 913, 921 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984)). "[T]he core of a RICO civil conspiracy is an agreement to commit predicate acts" in violation of one Section 1962(a),(b), or (c). *Hecht v. Commerce Clearing House,* 897 F.2d 21, 25 (2d Cir.1990). A RICO conspiracy claim does not require an allegation that the defendant actually committed the substantive offenses, *United States v. Teitler,* 802 F.2d 606, 613 (2d Cir.1986), but the complaint must allege that each defendant agreed to personally commit at least two predicate acts. It is not enough to allege that the defendant simply agreed to the commission of two or more predicate acts by coconspirators. *United States v. Ruggiero,* 726 F.2d 913, 921 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984).

Because the allegations fail to state a substantive RICO claim, and the conspiracy claim is based on the same set of allegations, the Court likewise dismisses the RICO conspiracy claim. *See, e.g., McLoughlin v. Altman,* No. 92 Civ. 8106, 1993 WL 362407, at *5 (S.D.N.Y. Sept.13, 1993) (dismissal of section 1962(c) claim mandated dismissal of conspiracy claim "because the latter claim relies on the same allegations as the Section 1962(c) claim"), *aff'd,* 22 F.3d 1091 (2d Cir. 1994).

 Even if the substantive RICO claims had been properly alleged, however, the Court finds that the complaint fails to allege facts detailing each participant's assent to the alleged "scheme" or "conspiracy." In order to survive a motion to dismiss, plaintiff's complaint must allege "facts implying an[ ] agreement involving each of the defendants to commit at least two predicate acts." *Hecht v. Commerce Clearing House,* 897 F.2d 21, 25 (2d Cir.1990). In other words, the complaint must allege "some factual basis for a finding of a conscious agreement among the defendants." *Id.* at 26 n. 4. Conclusory allegations of agreement are insufficient to state a RICO conspiracy claim, and only such allegations are found in the instant complaint. The complaint alleges no facts showing that individual defendants, by their words or actions, manifested a conscious agreement to commit predicate acts or showing knowledge by each of the defendants of the existence of the other alleged predicate acts.

### II. *Due Process and Equal Protection Claims.*

Plaintiff's only other cause of action based on federal law is his claim that he was denied his Constitutional due process and equal protection rights. Defendants argue that there is no basis for this Constitutional claim because the Hospital and all other defendants are private actors, and as such there is no state action upon which to allege a Constitutional violation. Although the complaint sets forth some of the ways that the state is involved in the Hospital's affairs, Complaint

---

**3.** The Court also notes the presence of an issue which neither party has addressed and which the Court will not decide here because of its dismissal of the complaint on other grounds. Specifically, the current complaint alleges a scheme of fraud that injured the plaintiff, but was perpetrated against third parties. Some courts have held that mail fraud may only be established if the party deceived is also the party that was injured. *See, e.g., McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,* 904 F.2d 786 (1st Cir.), *cert.*

*denied,* 498 U.S. 992, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990); *United States v. Lew,* 875 F.2d 219 (9th Cir.1989); *United States v. Shelton,* 848 F.2d 1485 (10th Cir.1988). Other courts have found that such convergence is not necessary in the RICO context. *See, e.g., Shaw v. Rolex Watch U.S.A. Inc.,* 726 F.Supp. 969, 972-73 (S.D.N.Y. 1989). The Second Circuit has explicitly declined to address this issue. *See, e.g., United States v. Eisen,* 974 F.2d 246, 253 & n. 2 (2d Cir.1992), *cert. denied,* 507 U.S. 1029, 113 S.Ct. 1840, 1841, 123 L.Ed.2d 467 (1993).

¶ 76, the Second Circuit has rejected such involvement as constituting state action. *Schlein v. The Milford Hospital Inc.*, 561 F.2d 427 (2d Cir.1977). Plaintiff apparently concedes that the claim fails, as evidenced by his lack of opposition to defendants' motion to dismiss his Constitutional claim. Accordingly, plaintiff's eighth cause of action, based on due process and equal protection violations, is dismissed with prejudice.

### III. State Law Claims.

The Court does not find any exceptional circumstances which would require it to retain jurisdiction over the plaintiff's six remaining causes of action which are based on New York State law. Because the parties' citizenship is not diverse, the Court dismisses the six remaining state law claims for lack of subject matter jurisdiction. *See West Hartford v. Operation Rescue*, 915 F.2d 92, 104 (2d Cir.1990) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)).

### IV. Rule 11 Sanctions.

Defendants also request that the Court impose sanctions pursuant to Fed.R.Civ.P. 11 for plaintiff's frivolous claims.[4] The Second Circuit has stated that Rule 11 sanctions should be "imposed with caution." *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir.1994), and that "any and all doubts must be resolved in favor of the signer." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985); *see also Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir.1993) (citations omitted).

 The Court agrees with defendants that the federal claims set forth against all of the defendants other than Joseph Cunningham were practically nonexistent. The RICO claim against Dr. Cunningham, however, is not clearly frivolous, and the Court therefore declines at this time to impose sanctions. Plaintiff and his attorneys, however, are reminded that the representations

they make to this Court must be supported by both the law and the facts which they know to be true. *See* Fed.R.Civ.P. 11(b).

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss the complaint is granted. The claims against all of the defendants except Dr. Cunningham are dismissed with prejudice, and plaintiff is granted 30 days from the date of this Memorandum and Order to file an amended complaint solely against the individual defendant Dr. Cunningham. In the event that the plaintiff does not timely file an amended complaint, the defendants shall submit an Order, on notice, for entry of Judgment in favor of the defendants.

SO ORDERED.

---

4. Defendants argue that sanctions must be imposed if the Court finds that plaintiff's claims are frivolous. *See O'Malley v. New York City Transit Authority*, 896 F.2d 704, 709 (2d Cir.1990). Defendants have clearly failed to read the current Rule 11, and thus ignore the 1993 amendment which makes "the imposition of sanctions ... discretionary rather than mandatory[.]" *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir.1994).